### UNITED STATES v. PAPE.

(District Court, S. D. Illinois, S. D. August 17, 1918.)

#### No. 15965.

1. WAR ⊂⇒4—ESPIONAGE ACT—CRIMINAL LIABILITY.

A citizen cannot be prosecuted criminally under Espionage Act June 15, 1917, § 3, for giving his reasons for not subscribing for Liberty Loan bonds and thrift stamps, and contributing to Red Cross fund, when requested for his reasons in the privacy of his own home, in the presence of nobody but a duly authorized committee, and especially when such reasons are mere matters of opinion, apparently honestly held.

2. WAR ⊂⇒4—ESPIONAGE ACT—CRIMINAL LIABILITY.

A criminal prosecution under Espionage Act June 15, 1917, § 3, cannot be based on the failure of a citizen to subscribe for Liberty Loan bonds or thrift stamps, or to contribute to patriotic funds, so long as he does not endeavor to induce others to do likewise.

Criminal prosecution by the United States against Theodore B. Pape. On demurrer to indictment. Demurrer sustained.

Edward C. Knotts, U. S. Dist. Atty., of Carlinville, Ill.

Graham & Graham, of Springfield, Ill. (Hugh Graham, of Springfield, Ill., of counsel), for defendant.

FITZHENRY, District Judge. The demurrer to this indictment is to its substance. The indictment contains two counts. The first charges that the defendant, on the 18th day of April, 1918, at Quincy, Adams county, Ill., at a time when the country was at war, did, "with intent to interfere with the operation and success of the military and naval forces of the United States, and to promote the success of its enemies," in the presence and hearing of divers persons, there state:

"He would not subscribe to the Liberty Loan bonds; that it was a matter of principle with him; that he did not want the war to continue, and that the government was wrong in its position; that he thought that if enough people would act in the way he was acting and withhold their money that the government would be forced to a position where it would make a peace by an agreement with Germany; that he did not want the United States victorious, nor did he want Germany victorious, but wanted the war to end in a draw;

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that he believed that, if the United States offered to meet Germany in conference, Germany's position would be such that certain terms of peace could be arrived at; he had not bought any Liberty bonds of any of the series; that he had bought no thrift stamps; that he had not participated in any Liberty bond parades, as he would not buy Liberty bonds; that he would not join the Red Cross, for that would be aiding the war, and he was opposed to the war."

The second count is substantially to the same effect, except that it charges an attempt. Just after counsel for defendant began his argument, he was interrupted by the district attorney, who stated that he wished the court to consider the demurrer in the light of all of the facts surrounding the commission of the alleged crime, and thereupon made the following statement of fact, which was concurred in by counsel for the defendant:

The defendant is a prominent citizen of Quincy, Ill., well educated, a member of the bar, and stands well among his neighbors; that he has not subscribed for any of the Liberty Loan issues, nor for thrift stamps, nor had he contributed to the Red Cross. Upon an examination of the records by the committee in charge of the patriotic activities in Quincy, the absence of the defendant's name from the lists of subscribers and contributors was observed. Members of the committee discussed the matter among themselves, and, nobody being able to explain the reason for the notable absence of defendant's name, it was decided by the meeting to appoint a special committee to wait upon him, and ask him his reasons for his omission of patriotic duty. The committee communicated with him and an interview was granted. The committee called at his home, and he was requested for his reasons for failure to subscribe and contribute. He told the committee he would give them his reasons; that it was a matter of principle with him, etc., using the words charged in the indictment. It is not contended that he ever communicated his reasons to any other person or persons than the committee which called upon him for that purpose, and the reasons were given in his own home, in the presence of nobody except the members of the committee. It is stipulated that he never attempted to get anybody else to adopt his views, or to act with reference to these patriotic activities as he was acting; that the words spoken by the defendant were spoken coolly and deliberately, and as an educated man would speak them; that after the interview he presented his views to nobody else, nor endeavored to have anybody else decline to subscribe or contribute.

The part of the act of June 15, 1917 (40 Stat. 219, c. 30, § 3), under which this prosecution was commenced, is as follows:

"Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies * * * shall be punished by a fine of not more than $10,000 or imprisoned for not more than 20 years, or both."

The issues raised by this demurrer were argued and submitted in the light of the facts admitted by the demurrer, as supplemented by the agreed state of facts. It is apparent from these facts that the defendant was opposed to the war; that he did not subscribe for bonds or thrift stamps, or contribute to the Red Cross funds, etc., with intent to embarrass his country in the prosecution of the war and to force it to negotiate for peace with Germany. However, it is agreed by counsel that he never attempted to prevent anybody else from doing so, and never did anything with reference to the matter, except to give his reasons for his conduct to a duly authorized committee in charge of the patriotic activities, when requested to do

so, and then in the privacy of his own home. Two questions are raised:

[1] 1. Can a citizen be prosecuted criminally for giving his reasons for not subscribing for Liberty Loan bonds and thrift stamps and contributing to Red Cross drives, when requested to do so in the privacy of his own home and in the presence of nobody other than the members of a duly authorized committee, and especially when those reasons are mere matters of opinion apparently honestly held?

2. Can a citizen be prosecuted criminally for a failure to buy Liberty Loan bonds and thrift stamps, and for a failure to contribute to the Red Cross drives?

The entire language charged in the indictment was used in explaining to the committee his reasons for his omission, and at the request of the committee. If the issues came before the court upon the indictment alone, where the criminal intent is well pleaded, a different question would be raised. But in the light of the facts submitted to the court, in connection with this demurrer to the indictment, the facts presumably being the ultimate facts susceptible of proof, the question of intent is entirely disposed of, and without a criminal intent there can be no prosecution in a case of this character.

[2] As to the second question: It is clear to this court that a criminal prosecution cannot be based upon the failure of a citizen to subscribe for bonds, or thrift stamps, or to contribute to patriotic funds, so long as he does not endeavor to get others to do likewise, with intent to interfere with the operation and success of the military establishment, or to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces, or to obstruct the recruiting or enlistment service of the United States, to the injury of the service.

Probably no series of events has done more to mobilize the patriotism of the American people than the Liberty Loan, thrift stamp, Red Cross, and other patriotic drives during the present war, and these great drives and their splendid successes, both in raising funds and intensifying the patriotism of the American people because of them, have furnished opportunities to everybody for voluntary service in the common cause. The citizen's love of the republic has frequently driven him to subscribe and contribute, not the criminal laws.

Congress has the power arbitrarily to take such portions of the property of the defendant, or such portion of his income, as may be necessary to promote the common defense, and has passed laws doing so, and it is about to pass another law greatly increasing the taxes which this defendant and every other citizen will have to pay. The criminal laws are constantly in operation to compel every citizen to do his full duty as a citizen with reference to all revenue measures. The Liberty Loan drives, thrift stamp campaigns, and other campaigns for the creation of funds for the Red Cross, Y. M. C. A., K. of C., and other organizations which are doing a great part in the winning of the present war, are solely opportunities for voluntary service. A citizen has a legal right not to buy or subscribe during the great drives, for any reason that is satisfactory to him,

provided he does not attempt to get others to accept his views, or to follow his acts in line with his views, for the purpose of interfering with the operation of the military establishment of the United States.

For these reasons, it is the opinion of the court that the defendant's demurrer to this indictment, in the light of the ultimate facts submitted, will have to be sustained.

Demurrer sustained. Defendant discharged.