## STATE v. CHARLES H. HARTUNG.[1]

### December 13, 1918.

### No. 21,044.

**War — discouraging aid to government — judicial notice.**

1. The evidence in this case is sufficient to sustain a conviction of the offense of advocating that the citizens of this state should not aid or assist the United States in carrying on the war with the public enemies of the United States. The evidence showed that language was used

[1]Reported in 169 N. W. 712.

tending to obstruct the work of procuring subscriptions to the Red Cross society. The court will take judicial notice that the United States was at war with Germany in June, 1917, and that the Red Cross society was an agency by which the citizens of the whole United States were assisting the United States in carrying on the war.

### Indictment — names unnecessary.

2. It was not necessary that the indictment allege the names of the persons to whom defendant's language was addressed.

### Witness — cross-examination.

3. In view of the testimony given by defendant it was not error to cross-examine him as to pro-German utterances made after the date of the language charged in the indictment.

### War — discouraging aid to government — discrepancies of language.

4. Discrepancies of language in describing the Red Cross organization for which funds were being solicited were unimportant. There was no error in restricting the examination in reference to the scope of the activity of such organization.

### Striking out testimony.

5. It was not error to strike out testimony on an immaterial point introduced for the purpose of impeachment.

Defendant was indicted by the grand jury of Martin county charged with the crime of seditious and disloyal teaching, tried in the district court for that county before Tifft, J., who at the close of the testimony denied defendant's motion that the proceeding be dismissed, and a jury which found defendant guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*John F. Bernhagen,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Albert R. Allen,* County Attorney, for the state.

HALLAM, J.

1. Defendant was convicted of violation of the provisions of section 3, chapter 463, p. 765, Laws of 1917. This section reads:

"It shall be unlawful for any person to teach or advocate * * * by oral speech, that the citizens of this state should not aid or assist the United States in prosecuting or carrying on war with the public

enemies of the United States."

The specific charge in the indictment is, in substance, that at the village of Welcome, Martin county, Minnesota, on June 6, 1917, while the county was at war with Germany, and while the citizens of this state were endeavoring to obtain subscriptions for the work of the Red Cross society to assist in carrying on the war, defendant said to and in the hearing of citizens soliciting such subscriptions: "You are working for the wrong side. Germany is right in this war, and I will not help the wrong side. I will not give a cent unless this money is going to Germany."

The evidence on behalf of the state is that Red Cross solicitors of the village of Welcome approached defendant on a street of the village and asked him for a subscription and that, in response, defendant, in the presence of the solicitors and a number of citizens, used language substantially as charged.

The evidence is sufficient to sustain the conviction. We take judicial notice of the fact that the United States was at war with Germany in June, 1917, and that the Red Cross society was an agency by which the citizens of Minnesota and of the whole United States were assisting the United States in prosecuting and carrying on the war. By the language used, defendant clearly advocated that the citizens of this state should not aid or assist the United States in prosecuting or carrying on the war. Their natural and necessary effect was to that end. See State v. Freerks, 140 Minn. 349, 168 N. W. 23.

2. Defendant complains that the indictment does not allege the names of the persons to whom the offensive remarks were addressed.

The Constitution gives to defendant the right "to be informed of the nature and cause of the accusation against him." Const. art. 1, § 6. The statute provides that the indictment must contain "a statement of the acts constituting the offense." G. S. 1913, § 9134. The real question is, whether, in view of the omission complained of, the indictment complies with the requirements of these sections. We think it does.

These sections make it necessary that the indictment shall allege every essential act descriptive of the offense. State v. McDonald, 105 Minn. 251, 117 N. W. 482. The offense charged is that defendant did "teach and advocate by oral speech" the doctrines complained of. While

141 M.—14.

of course hearers are necessary to constitute the offense charged, the names of the particular hearers constitute no element of the offense. An allegation of the names of the hearers may sometimes be useful to inform the defendant of the occasion on which the words are alleged to have been uttered, but the occasion was sufficiently indicated by other language in this indictment. The indictment alleged that the language was addressed to the citizens at Welcome who were on June 6, 1917, endeavoring to obtain subscriptions of money for the Red Cross society. We are of the opinion that this was sufficient. The addition of names would have added little of practical value to defendant.

There is not a suggestion that defendant was misled or was in the dark as to the occasion on which the language was claimed to have been uttered. Defendant produced several witnesses who were present on that occasion. There is no claim that he was hampered in procuring witnesses by lack of information in the indictment. There can be no serious claim that there was any omission which tended to prejudice the substantial rights of the defendant on the merits and the indictment should accordingly be sustained. G. S. 1913, § 9143.

Our position is sustained by authority. In prosecutions for passing counterfeit coin under a Federal statute making it a crime to pass such counterfeit, with intent to defraud any person whatever, it has been held not necessary that the indictment name the person to whom the coin was given. U. S. v. Bejandio, 1 Woods C. C. 294, Fed. Cas. No. 14,561. In prosecutions for criminal libel it has been held, though not universally, that an indictment is not fatally defective in failing to state the mode of publication. State v. Dowd, 39 Kan. 412, 18 Pac. 483; Rattray v. State, 61 Miss. 377. In United States v. Pierce, 245 Fed. 888, a prosecution under the Federal Espionage Act for circulating false reports and soliciting persons with the intent of obstructing enlistment, the court even refused to require the government to furnish a bill of particulars giving the names of the persons solicited. Decisions in cases of assault, larceny and the like are not pertinent here. In such cases the name of the injured person is held to be a necessary part of the description of the offense. The distinctions pointed out in State v. Blakely, 83 Minn. 432, 86 N. W. 419, are valuable.

3. On cross-examination of the defendant, the prosecutor asked this

question: "And did you not say to them (two men soliciting subscriptions for bonds) about the 24th of last * * * October (1917) that you didn't think this country had any business to go down there and bother Germany, that Germany wasn't coming over here to bother us?" Objection to this question was overruled. After questioning the date, defendant said: "I think I did." This ruling is assigned as error. Defendant had testified without objection that he had said Germany was right in the beginning of the war. He was asked: "You have always claimed that America was wrong and Germany right in this war, haven't you?" He answered: "I don't know that I have, towards the last." Then followed the question assigned as error.

We think the examination was all germane to the issue. The evidence tended to show a continued state of mind and habit of speech. It showed inclination to commit an offense of the character charged and had some tendency to corroborate the evidence of the state's witnesses and to show the guilt of the defendant of the crime charged. See State v. Ames, 90 Minn. 183, 192, 96 N. W. 330. It also tended to contradict or weaken the force of the testimony defendant had previously given and on that ground was properly received. State v. Klitzke, 46 Minn. 343, 49 N. W. 54.

4. Defendant complains that he was limited in his inquiry as to the scope of the activity of the Red Cross society and its relation to the army of the United States, that evidence was received as to the function of the "American Red Cross Society," whereas the indictment used the words "Red Cross Society," and he lays stress on some evidence that there was no chapter of the American Red Cross society in Welcome at the time this offense was committed. We do not regard these discrepancies as important. The general activities of the Red Cross organization are matter of common knowledge. It is a loose organization embracing millions of people. Whether there was a regularly organized chapter of the society matters little. When the defendant was charged with discouraging and obstructing the procuring of subscriptions for carrying on "Red Cross" activities, the charge was plain and well understood.

5. A witness, Emil Krahmer, called to "impeach" the witnesses for the state testified that an argument arose between Dr. Strobel, who was soliciting subscriptions, and the witness, as to the comparative efficiency of American and German schools. The testimony was stricken out. The

ruling was right. The testimony was on an immaterial matter and was not admissible even for purpose of impeachment.

Order affirmed.

HOLT, J. (dissenting).

I dissent. In my opinion, the evidence fails to show a violation of section 3 of chapter 436, p. 765, Laws 1917. It appears that the defendant lived in a small village. He was an elderly man, perhaps with some leisure time. After supper he walked up to one of the stores and took a seat on a chair or box outside the door; another resident of the village seated himself on the other side of the door. About this time a committee of two came along to solicit subscriptions for the Red Cross. They entered the store and interviewed the storekeeper, then came out and requested a contribution from defendant. He declined and attempted to justify his so doing by the remarks contained in the indictment. Conceding defendant to be altogether in the wrong from a patriotic standpoint, I do not think the law was ever intended to punish a person for stating his reasons, bad though they be, for refusing to comply with a request to render that aid to the conduct of the war which the government had indicated should be given. It is only when a person designedly teaches or advocates that others shall not aid, or when his utterances, even though veiled and indirect, are such that the jury may find that the necessary result is to teach or persuade citizens not to aid that the law steps in. The remarks of defendant were casual, and were not made in an effort to influence others, but simply as an answer to a request then made of him.

It also seems to me that the cross-examination of defendant concerning his alleged remarks upon being solicited to buy liberty bonds several months after speaking the words upon which he was tried, and the state's rebuttal contradicting his answers on such cross-examination, trench upon the rules governing the admissibility of testimony in criminal trials.