## STATE v. WILLIAM LUDEMANN.[1]

### June 20, 1919.

### No. 21,269.

**War — assisting United States — Red Cross Society.**

Defendant had refused to join the Red Cross Association when requested to so do by a subcommittee, appointed through or by the association. He was reported to the head committee whose four members visited defendant at his home, for the stated purpose of obtaining from him his reasons for not joining, if he persisted in his refusal to join. For the language used in giving his reasons to the head committee, when so visited, defendant was convicted. No one but the members of the committee was present when the words were uttered. It is *held*: The circumstances under which the words were spoken exclude the inference that there was a teaching or advocating in violation of section 3, chapter 463, Laws 1917.

Defendant was indicted by the grand jury of Wright county charged with the crime of interfering with enlistment, tried in the district court for that county before Giddings, J., and a jury which found him guilty as charged in the indictment. From an order denying his motion to set aside the verdict and for a new trial, defendant appealed. Reversed.

*H. C. West* and *C. D. O'Brien,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Stephen A. Johnson,* County Attorney, for respondent.

HOLT, J.

The defendant was indicted and convicted of having unlawfully advocated that citizens of this state should not aid or assist the United States in prosecuting war with its public enemies, contrary to the provisions of

[1]Reported in 172 N. W. 887.

section 3, chapter 463, p. 764, Laws 1917. The appeal is from the judgment.

There are many assignments of error, but only one will be considered, since that disposes of the case upon the merits.

The object of the law referred to was to prevent people from attempting to persuade others to refrain from aiding the government in carrying on the war with Germany. It was plainly not designed to force citizens to contribute to, or to join the Red Cross or any kindred association of whose valuable assistance the government has availed itself all through the war. Finding fault with either the government or the societies engaged in war activities, is not made a crime, unless the criticism is made under such circumstances that it is permissible to draw the inference that citizens were thereby taught not to aid the government in the prosecution of the war. The circumstances under which the language attributed to defendant, was spoken, must therefore be looked to, in order to determine whether there was a violation of the statute.

Shortly before the time when defendant is charged with the commission of the offense, there had been committees duly appointed in Wright county, Minnesota, by the National Red Cross Association, to solicit members and funds for the association. There were head committees and subcommittees. Defendant was a farmer, residing some miles from Buffalo, the county seat. A subcommittee of two members had visited his farm on December 16, 1917, and had requested him to pay one dollar and become a member of the Red Cross Association. He refused and was at once reported to the head committee, consisting of Messrs. Adams, Price, Mithun and Swenson. The next day these four men drove to defendant's farm, and found him on or near the porch of his dwelling. No one else was there. Mr. Adams, the spokesman of the committee, stated to defendant that their purpose was to procure the membership of the ones visited or "get them to give some reason why they should not join." Mr. Adams' version of what then occurred, corroborated by the testimony of his associates, is substantially this: After the introductory remark mentioned he continued by saying that there was, perhaps, no need to explain the work of the Red Cross organization to a man of defendant's intelligence. The latter responded: "Yes, I know all about the American Red Cross Society, and I will not have anything to do with it

or with any of the other side issues; let the government do the work the Red Cross is trying to do." Mr. Adams then said that the government was doing all in its power, and that the Red Cross Association was simply seeking to aid in carrying on the war. Defendant responded: "I don't care anything about the war, the government got us into it and let the government get us out of it and that it was entirely unnecessary, and for me I am · damn sick of it anyhow." Mr. Mithun thereupon made some remark that they simply called to ask him to join the society and pay his dollar, a small amount. Defendant then said: "You are always out here asking for money. Some ass in the government employ sent a man out here to count my seed corn; why in hell didn't they send · a man out here to help me gather that corn?" Upon further urging to join he responded: "I told you I would not join that * * * grafting association. * * * How do I know what you men will do with the money you get? * * * You four men have come out here to coerce and intimidate me into joining. * * * Why don't the government raise this money by direct taxation?"

This committee came to defendant to urge him to join the Red Cross Association and pay the membership fee, or have him give a reason for not doing so. He gave his reason in the privacy of his own home upon the demand of the committee. No matter how poor or even wicked the · reason was, his statement thereof, given upon the request of the committee, should not be held a violation of either the letter or the spirit of the law. Defendant had not sought the interview. He was not trying to influence the committee. He was simply excusing as best he could his own conduct. Had these words been spoken at a public gathering, or had defendant sought the opportunity to express to citizens generally sentiments regarding the Red Cross Association such as the jury found he did express, an inference of forbidden teaching could readily have been drawn. But we think the circumstances under which defendant here was called upon to give expression to his thoughts exclude such inference. State v. Spartz, 140 Minn. 203, 167 N. W. 547.

The view taken by a Federal judge of section 3 of the Espionage Act of Congress of June 15, 1917 (40 St. 219), in United States v. Pape, 253 Fed. 270, meets with our approval, and is applicable to the case in hand, wherein he answers in the negative the question: "Can a citizen

be prosecuted criminally for giving his reasons for not subscribing for Liberty Loan bonds and thrift stamps, and contributing to Red Cross drives when requested to do so in the privacy of his own home and in the presence of nobody other than the members of a duly authorized committee, and especially when those reasons are mere matters of opinion apparently honestly held?" Continuing the judge said: "It is clear to this court that a criminal prosecution cannot be based on the failure of a citizen to subscribe for bonds, or thrift stamps, or to contribute to patriotic funds, so long as he does not endeavor to get others to do likewise. * * * A citizen has a legal right not to buy or subscribe during the great drives, for any reason that is satisfactory to him, provided he does not attempt to get others to accept his views, or to follow his acts in line with his views, for the purpose of interfering with the operation of the military establishment of the United States."

The case at bar is to be distinguished from the one of State v. Hartung 141 Minn. 207, 169 N. W. 712, where the words spoken by the accused were so spoken in the presence of others than the committee soliciting the subscription and where no reason for a refusal to subscribe was asked for.

In the statement of the case we have not endeavored to give defendant's version of the visit, for evidently it was not accepted as true by the jury.

We are of the opinion that the evidence is insufficient to show an offense against section 3 of chapter 463, p. 764, Laws 1917.

The judgment is reversed and the verdict vacated.