Argued at Pendleton October 28, 1918, affirmed January 7, 1919.

## STATE *v.* BUSICK.

(177 Pac. 64.)

**Intoxicating Liquors—Sale—Indictment—Sufficiency.**

1. Indictment under Laws of 1917, page 46, Section 1, amending Section 5, Laws of 1915, page 151, but leaving Sections 1–4 in full force, as to unlawful sale, etc., of intoxicants, *held* sufficient although particular liquor was not designated; such designation not being required in view of Laws of 1915, page 166, Section 33.

**Criminal Law—Proof of Other Sales—Admissibility.**

2. In prosecution under Laws of 1917, page 46, section 1, amending Section 5, Laws of 1915, page 151, for unlawful sale of intoxicants, evidence of other like sales was admissible in view of Laws of 1915, page 169, Section 39, to show character of business done by accused, etc.

**Criminal Law — Witness Employed to Obtain Evidence — "Accomplice."**

3. One employed to make purchase of intoxicants for purpose of appearing as witness against defendant was not an "accomplice," within Sections 1540, 2370, L. O. L., so that conviction could be had on his uncorroborated testimony; the crime being the sale and not the purchase.

[As to inducement to violate liquor law with view to prosecution therefor as defense to such prosecution, see note in Ann. Cas. 1916C, 732.]

From Union: JOHN W. KNOWLES, Judge.

In Banc.

On June 10, 1918, the defendant was indicted by the grand jury of Union County, charged with violation of the prohibition statute, in that he "did then and there wrongfully and unlawfully sell intoxicating liquor, by then and there selling to one William Wolf one pint of intoxicating liquor, receiving therefor $1.50, lawful money of the United States." The defendant demurred to the indictment upon the ground that:

"It does not state facts sufficient in law to constitute the crime charged, or any crime, or offense; nor does the indictment conform to the requirements of Chapter VII, Title XVIII, of the Code of Criminal Pro-

cedure of the State of Oregon, especially in not informing this defendant what particular character of intoxicating liquor is charged, whether beer, alcohol, whisky or other liquor."

The demurrer was overruled.

It appears from the record that the defendant was a druggist doing business in the town of Union; that the sale in question was of what is known as "Bitter Herb Tonic"; that the prosecuting witness, William Wolf, was employed by the office of the district attorney of Union County to make the purchase with a view of basing a criminal prosecution thereon and that pursuant to such employment he did make three separate purchases and then appeared as a witness before the grand jury which returned the indictment in question. The defendant was tried and convicted, and sentenced to pay a fine of $300, in default of which payment he should be confined in the county jail one day for each two dollars thereof, from which sentence he prosecutes this appeal.

There are numerous assignments of error, including the overruling of the demurrer to the indictment, the failure of the court to instruct the jury to return a verdict for the defendant, the giving of certain instructions and the refusal to give certain requested instructions. Further, it is claimed that the prosecuting witness, William Wolf, was an accomplice and that there was no corroborating evidence of the purchase made by him.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Charles H. Finn.*

For the State, there was a brief with oral arguments by *Mr. George M. Brown,* Attorney General, and *Mr. John S. Hodgin,* District Attorney.

JOHNS, J.—The indictment was found under Section 5, Chapter 40, page 46, Laws of 1917, which is in part as follows:

"Except as hereinafter provided in this amendatory Act it shall be unlawful for any person to receive, import, possess, transport, deliver, manufacture, sell, give away or barter any intoxicating liquor within this State; and the place of delivery of any intoxicating liquor is hereby declared the place of sale."

This section is an amendment to Chapter 141, page 150, Laws of 1915, but it leaves Sections 1, 2, 3 and 4 of the original Act of 1915 in full force and effect as follows:

"Section 1. This entire Act shall be deemed an exercise of the police powers of the State for the protection of the public health, peace and morals, and all of its provisions shall be liberally construed for the attainment of that purpose.

"Section 2. The words 'intoxicating liquor,' as used in this Act shall be construed to embrace all spirituous, malt, vinous, fermented or other intoxicating liquors; and all mixtures or preparations reasonably likely or intended to be used as a beverage, which shall contain in excess of one half of one per centum of alcohol by volume, shall be deemed to be embraced within such term, independently of any other test of their intoxicating character; and all mixtures, compounds or preparations, whether liquid or not, which are intended, when mixed with water or otherwise, to produce, by fermentation or otherwise, an intoxicating liquor, shall also be deemed to be embraced within such term.

"Section 3. The term 'magistrate,' where used in this Act, shall mean any justice of the peace, district judge, county judge, judge of a municipal court, judge of a circuit or superior court, or any other officer authorized and empowered to exercise the powers of a justice of the peace or a magistrate as provided by the laws of this State.

"Section 4. The term 'prosecuting officer,' where used in this Act, shall mean any district attorney or deputy or assistant district attorney for any county or counties within his jurisdiction, or any prosecutor in any county for which he may be appointed or to which he may be assigned by the Governor for the purpose of enforcing any of the provisions of this Act."

Section 33 of the Act of 1915 provides:

"In prosecutions under this Act, whether begun by indictment, complaint or information, it shall not be necessary to state the kind or quantity of liquor manufactured or sold, and it shall not be necessary to describe the place where the same was manufactured or sold, except in prosecutions for the keeping and maintaining of a common nuisance as defined by this Act, or when a lien is sought to be established against the place where such liquor was illegally sold; and it shall not be necessary to state the name of the person by whom the same was manufactured or sold, nor to state the name of the person to whom the same was sold; and it shall not be necessary in the first instance, for the State to allege or prove that the party charged did not have legal authority to sell such liquor, or was not within any of the exceptions provided by this Act."

And in Section 39 we find:

"In any such prosecution evidence of other sales of intoxicating liquor at or about the same time by the same person or at the same place to other persons shall be admissible as tending to show the character of the business in which the defendant is engaged and the probability and credibility of such testimony as may be introduced of the particular sale or sales upon which the state shall rely for conviction."

1, 2. Under the provisions of these last two sections, we think the allegations in the indictment are sufficient and the evidence of other like sales was admissible.

The defendant claimed and undertook to prove that the "Bitter Herb Tonic" was a mixture or preparation sold by many druggists for medicinal purposes and that

it was not "reasonably likely or intended to be used
as a beverage." He also claimed that it did not "con-
tain in excess of one half of one per centum of alcohol
by volume." Such questions were fairly submitted to
the jury under proper instructions. The crime charged
against the defendant is the sale of intoxicating liquor.
The question as to whether the preparation sold was
intoxicating or not, was also fairly submitted to the
jury. The record shows that the prosecuting witness
was employed to obtain the incriminating evidence
against the defendant and that for such purpose only,
he did within twenty-four hours make three distinct
and separate purchases, each of one bottle of "Bitter
Herb Tonic" at the price of $1.50 per bottle. The de-
fendant admits the three separate sales, but claims that
they were made in the regular course of his business as
a druggist; that they were made as of a drug and not
as of a beverage; that if there was any crime com-
mitted in such sales the prosecuting witness was an ac-
complice; that the latter's testimony is not corrobo-
rated and for such reason the court should have di-
rected a verdict. That is the vital issue in this case.

Section 2370, L. O. L., provides:

"All persons concerned in the commission of a
crime, whether it be felony or misdemeanor, and
whether they directly commit the act constituting the
crime, or aid and abet in its commission, though not
present, are principals, and to be tried and punished as
such."

And Section 1540 provides:

"A conviction cannot be had upon the testimony of
an accomplice, unless he be corroborated by such other
evidence as tends to connect the defendant with the
commission of the crime, and the corroboration is not
sufficient if it merely show the commission of the crime,
or the circumstances of the commission."

In *State* v. *Roberts,* 15 Or. 187 (13 Pac. 896), quoting
from Wharton's Criminal Evidence, Section 440, this
court said:

"An accomplice is a person who knowingly, volun-
tarily, and with common intent with the principal of-
fender, unites in the commission of a crime."

In *State* v. *Edlund,* 81 Or. 617 (160 Pac. 535), this
court, speaking through Mr. Justice MOORE, said:

"The term, so far as involved herein, may be defined
as follows: An accomplice is a responsible person
whose willful participation in the commission of a
crime, when that fact is established by competent evi-
dence in a court of requisite jurisdiction, renders him
liable to a conviction of the offense."

In Underhill on Criminal Evidence (2 ed.), page 120,
Section 69, the author says:

"A person who, as a detective, associates with crim-
inals or communicates with or aids them solely for the
purpose of discovering commission of crime and pro-
curing the punishment of the criminals is not an ac-
complice."

In Greenleaf on Evidence, Volume 1 (15 ed.), page
524, Section 382, this rule is laid down:

"There is one class of persons *apparently accom-
plices,* to whom the rule requiring corroborating evi-
dence does not apply; namely, persons who have
entered into communication with conspirators, but
either afterwards repenting, or, having originally de-
termined to frustrate the enterprise, have subsequently
disclosed the conspiracy to the public authorities,
under whose direction they continue to act with their
guilty confederates until the matter can be so far ad-
vanced and matured, as to secure their conviction and
punishment. The early disclosure is considered as
binding the party to his duty; and though a great de-
gree of objection or disfavor may attach to him for
the part he has acted as an *informer,* or on other ac-

counts, yet his case is not treated as the case of an accomplice.''.

Rice on Evidence, Volume 3, page 525, lays down this rule:

''A policeman, by pretending to be an accomplice, may obtain access to a chamber where counterfeiting instruments are collected, but this does not prevent a conviction being rendered on his testimony. * *

''One of the most nefarious and infamous conspiracies ever known in this country—that of the 'Molly Maguires,' in 1876, to coerce by assassination the coal proprietors of the Pennsylvania anthracite region—was exploded, and the chief perpetrators brought to justice by the sagacity and courage of a detective who attended the meetings of the conspirators and thus became possessed not only of their plans for the future but of their exploits of the past. * *

''The fact that postoffice inspectors resorted to test or decoy letters in order to bring to justice a person suspected of using the mails for the circulation of obscene literature, does not operate to discredit their testimony upon the trial of that person for that offense.''

Wigmore on Evidence, Volume 3, Section 2060, page 2756, states the rule thus:

''The case of a *pretended confederate,* who as detective, spy, or decoy, associates with the wrongdoers in order to obtain evidence, is distinct from that of an accomplice, although the distinction may sometimes be difficult of application. * * The line should perhaps be drawn in this way: When the witness has made himself an agent for the prosecution before associating with the wrongdoers or before the actual perpetration of the offense, he is not an accomplice.''

In 1 R. C. L., page 159, Section 6, it is said:

''Thus, for instance, a detective who, for the purpose of discovering crime, ostensibly aids in its commission or in a conspiracy to commit it, is not an accomplice whose testimony must be corroborated.''

In *State* v. *Gibbs,* 109 Minn. 247 (123. N. W. 810), it is said:

"Moreover, according to the settled law of this state the fact that the officers purchased beer did not render them *particeps criminis.* Nor does the further fact that they were in pursuit of evidence against persons selling liquor contrary to law make them accomplices: *State* v. *Baden,* 37 Minn. 212 (34 N. W. 24). And to adopt the language of Mr. Justice BREWER, in *Grimm* v. *United States,* 156 U. S. 604, at page 610 (15 Sup. Ct. Rep. 470, at page 472, 39 L. Ed. 550): 'It does not appear that it was the purpose of the postoffice inspector to induce or solicit the commission of a crime, but it was to ascertain whether the defendant was engaged in an unlawful business': *Andrews* v. *United States,* 162 U. S. 420 (40 L. Ed. 1023, 16 Sup. Ct. Rep. 798), to which the defense refers us, tends, indeed to sustain this conviction. So in *Campbell* v. *Commonwealth,* 84 Pa. St. 187, the testimony of Detective McFarlan exposing the famous Molly Maguire conspiracy was received. The court, per STERRETT, J., held that: 'A detective who joins a criminal organization for the purpose of exposing it and bringing criminals to punishment, and honestly carries out that design, is not an accessory before the fact, although he may have encouraged and counseled parties who were about to commit crime, if in so doing he intended that they should be discovered and punished, and his testimony, therefore, is not to be treated as that of an infamous witness.' "

*Harrington* v. *State,* 36 Ala. 236, 242, holds:

"Lyon was certainly not an accomplice of the defendant in the act of selling. There was no community of purpose between them; the defendant not even being aware of Lyon's presence, nor in any degree influenced by it. The statutory offense consists in the act of selling, not in that of buying; and neither the purchaser, nor one participating in the purchase can be deemed an accomplice of the seller."

Enc. L. & P., Volume 1, page 553, thus lays down the rule:

"A person who feigns complicity in the commission of a crime, in order to entrap the accused, is not an accomplice."

We quote from 16 C. J. the following rules, which cite numerous authorities.

"*Feigned accomplice.* One who participates in a felony as a feigned accomplice, in order to entrap the other, is not criminally liable": Section 115, page 129.

"*Illegal sales.* The purchaser of articles sold in violation of the statute is not an accomplice of the seller, although he made the purchase for the special purpose of securing the conviction of the seller. This rule applies to the sale of intoxicating liquor, of lottery tickets, or of goods with counterfeit labels": Section 1386, page 681.

"*Feigned assistance.* One who for the purpose of securing evidence against the perpetrator of a crime feigns to aid him is not an accessory after the fact": Section 137, page 139.

"*Violation of Liquor Law.* It is very generally held that one who purchases intoxicating liquor which is sold in violation of law is not an accomplice of the seller": Section 1397, page 683.

3. The crime charged against the defendant is the sale of intoxicating liquor and the record is conclusive that the prosecuting witness was employed to make the purchase for the purpose of appearing as a witness against the defendant, but there is a very marked difference between the legal status and liabilities of a seller and those of a purchaser. While it is true that a sale cannot be made without a purchaser, it is also true that under the statute the crime is in the sale of intoxicating liquor and not in the purchase. The whole purpose and intent of the prohibition enactment was to prevent and punish the sale of intoxicating

liquor, and as it fails to make the purchase of such liquor an indictable offense, we hold that Wolf, as a purchaser, was not an accomplice of the defendant as a seller.

We have examined the remaining questions presented by the appeal, but the record shows that the defendant had a fair trial and the judgment of the Circuit Court is affirmed.                               Affirmed.

Mr. Justice Harris was not present at the hearing of this cause.