Argued March 25, affirmed April 22, 1919.

# STATE *v.* MALLORY.

(180 Pac. 99.)

**Fornication—Corroboration of Injured Female.**

1. Section 1542, L. O. L., specifically requiring that the evidence of the female abducted or seduced must be corroborated, applies to abduction and seduction only, and not to the crime of fornication, defined in Section 2077.

**Fornication—Previous Chaste Character of Female—Evidence.**

2. In a prosecution under Section 2077, L. O. L., providing that any male person over eighteen years old, who shall in such a manner as not to constitute rape carnally know any female person of previous chaste and moral character over sixteen and under eighteen years of age and not his lawful wife, shall be deemed guilty of fornication, evidence *held* sufficient to show that the prosecutrix was of previous chaste character.

**Criminal Law—Review—Instructions—Rape—Verdict—Evidence.**

3. In a prosecution under Section 2077, L. O. L., for fornication, where prosecutrix was over sixteen years old, so that the crime could not be rape, under Section 1912, and the jury was instructed on forcible rape, and that if defendant's acts constituted rape he must be acquitted of the fornication charged, it must be assumed the jury by its verdict of guilty found defendant's acts did not constitute rape.

**Criminal Law—Witnesses—Accomplices—Intent.**

4. The provision of Section 1540, L. O. L., that a conviction cannot be had upon the uncorroborated testimony of an accomplice connecting defendant with the crime, does not apply to a conviction of fornication under Section 2077, under which the male person only can be guilty, and where the evidence shows that prosecutrix was not an accomplice, because she did not knowingly, voluntarily, and with a common intent unite in the commission of the crime.

[As to corroboration, see note in 139 Am. St. Rep. 377.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

The defendant, a naturopathic physician, was indicted, tried and convicted under the provisions of Section 2077, L. O. L., which is as follows:

"If any male person over the age of eighteen years shall, in such manner as does not make the act rape, carnally know any female person of previous chaste

and moral character, who is over the age of sixteen years and under the age of eighteen years, and is not his lawful wife, such male person shall be deemed guilty of fornication, and upon conviction thereof, shall be punished by a fine of not less than $50 nor more than $400, or by imprisonment in the county jail for not less than one month nor more than one year, or by imprisonment in the penitentiary not less than one year nor more than five years.''

The alleged crime was committed in his office in the Broadway Building at the corner of Broadway and Morrison Streets in the City of Portland, between 2 and 3 o'clock P. M. on Friday, April 19, 1918.

The evidence tends to show that the prosecuting witness was a country girl seventeen years of age, who for many years had been and then was living with her parents on a farm near Milwaukie. In addition to a goiter she had female trouble for which, through the advice of her parents, she had received former treatments from other physicians but without success. Friends of the family recommended the defendant, the parents took the daughter to his office and after consultation an agreement was made by which the defendant was to give her thirty treatments, for which they were to and did pay him $50 in advance. After all such treatments had been given, covering a period of about forty days, under the representations of the defendant as to the girl's improved condition and with the advice and approval of her parents, they were continued and in all covered a period of about sixty days.

The treatments in question consisted of massages and the application of various electrical apparatus, during the course of which the girl was required to and did remove all of her clothing. The testimony also shows that she furnished her own kimona, but it is not clear as to whether her clothing was removed in the

presence of the defendant or not. In taking the treatments the girl was usually accompanied by her mother, but on the particular day mentioned they separated at Milwaukie at 1:30 P. M., the mother went to assist in Red Cross work and the daughter went alone to the office of the defendant. On her arrival at the office there was present one other patient, who left within a very short time.

The prosecuting witness was greeted by the defendant, who inquired if she was alone, and where her mother was. The testimony tends to show that upon being advised that she was alone and that her mother was assisting in some Red Cross work, the girl was then escorted into the inner room, or private office, where, at defendant's request, all of her clothing was removed, after which he locked all the doors leading into the room and then proceeded with his usual course of treatment, during which he made improper proposals, representing that what he suggested was for the girl's own good, and necessary to effect a permanent cure, which finally culminated in the commission of the act of which the defendant was convicted. While not very clear, the testimony also indicates that the girl offered some resistance; that she was somewhat dazed and thought herself to be under a hypnotic influence.

On the same day, within a few hours after she returned to her home, the girl informed her mother, who in turn told the father what had occurred, and the three returned to Portland on the following morning. There, by advice of the district attorney, the girl was examined by two disinterested reputable women physicians who found and testified that her hymen was ruptured and her private parts badly lacerated, and gave their opinion that this condition was caused

by sexual intercourse within the past twenty-four hours.

On April 30th, about two weeks before the indictment was found, the girl's mother called at the defendant's office to get her daughter's kimona and a sheet, at which time nothing was said by either party except that the mother asked for the articles.

On the following day the defendant left his office and ceased to practice his profession.

At the conclusion of the state's testimony, the defendant moved the court "to direct the jury to find the defendant not guilty, on the ground that the state had failed to produce testimony sufficient to go to the jury." At the conclusion of all of the testimony the defendant again moved the court "to direct the jury to return a verdict of not guilty, for the reason that the evidence was insufficient to permit the case to go to the jury." The motions were denied and exceptions were duly taken and allowed.

The defendant requested the following instructions, which the court refused to give, and to this ruling exceptions were duly taken:

"(1). In this case I instruct you that before you can find the defendant guilty the testimony of the complaining witness [naming the girl] must be corroborated and this corroboration must not only be as to the circumstances of the case but also as to the person of the defendant. In other words, the testimony of —— [the complaining witness] must be corroborated to the effect that intercourse was had with her, and that defendant committed the act. It is not enough to show corroboration of the intercourse but there must be corroboration of her testimony that the defendant was the party who had intercourse with her.

"(2). The prosecuting witness [naming her], being a party to this alleged act, it is your duty to

view and consider her testimony with caution and unless you find that her testimony is corroborated and that such corroboration connects this defendant with the commission of said alleged crime, it is your duty to find the defendant not guilty."

It appears from the bill of exceptions that

"there was corroboration of the testimony of the witness aforesaid to the effect that sexual intercourse had been had with her on the day named in her testimony, but there was no corroboration of her testimony to the effect that defendant had had such intercourse."

Her evidence "was contradicted in all substantial parts by the testimony of the defendant, and by the testimony of Rose Mallory, the defendant's wife."

From conviction and sentence the defendant prosecutes this appeal, contending that the court erred in refusing to give each of the above instructions, and in refusing to direct a verdict for the defendant.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Wallace McCamant* and *Mr. Frank S. Senn,* with an oral argument by *Mr. McCamant.*

For the State there was a brief over the names of *Mr. George M. Brown,* Attorney General, *Mr. Walter H. Evans,* District Attorney, *Mr. E. F. Bernard,* Deputy District Attorney, and *Mr. John A. Collier,* Deputy District Attorney, with oral arguments by *Mr. Brown* and *Mr. Bernard.*

JOHNS, J.—To commit the crime with which the defendant is charged under Section 2077, L. O. L.: First, the offender must be a male person over the age of eighteen years, and it must be committed so as not to make the act rape; second, the offender must

"carnally know any female person of previous chaste and moral character"; third, who is over the age of sixteen years and under the age of eighteen years, and is not his lawful wife; and when so committed, such male person shall be deemed guilty of fornication and upon conviction thereof shall be punished, etc.  By the specific provisions of the statute, the commission of fornication is limited and confined to male persons only, and could not be committed by a female.  It can be committed only by a male person over the age of eighteen years, upon a "female person of previous chaste and moral character," who is over the age of sixteen years and under the age of eighteen years. The above section specifically provides that "such male person shall be deemed guilty of fornication" and punished accordingly.  It should also be noted that there is no provision in this section requiring the testimony of the female to be "corroborated by some other evidence tending to connect the defendant with the commission of the crime."  This section was enacted in 1905.

1. The defendant cites and relies upon Section 1542, L. O. L., which is as follows:

"Upon a trial for inveigling, enticing, or taking away an unmarried female for the purposes of prostitution, or for having seduced and had illicit connection with an unmarried female, the defendant cannot be convicted upon the testimony of the female injured, unless she is corroborated by some other evidence tending to connect the defendant with the commission of the crime."

But Section 1542 was enacted in 1864 and specifically provides that the evidence of the female abducted or seduced must be corroborated.  There is no age limitation placed upon either the male or the female, and the statute defines and is intended to apply to abduc-

tion or seduction only, without embracing or including the crime of fornication, which is defined by Section 2077, L. O. L., under which the defendant was indicted.

The court instructed the jury:

That "the burden of proof is upon the state to satisfy you beyond a reasonable doubt of the truth of each material allegation of the indictment"; that "the essential elements of this crime are that it was committed in the county of Multnomah, State of Oregon; that the defendant was a male person over the age of eighteen years; that —— [the prosecuting witness] was a female person over the age of sixteen years and under the age of eighteen years, and that she was a female person of previous chaste and moral character; that she was not the lawful wife of W. E. Mallory, and that W. E. Mallory carnally knew the said —— [prosecuting witness] in manner and form as alleged in the indictment. And in addition, that such carnal knowledge was not a forcible ravishing of the said —— [prosecuting witness], because that would constitute the crime of rape, which is excluded by this indictment."

2. While the proof is conclusive that the girl was chaste, the defendant contends that there was no testimony that she had a "moral character" and it is true that there is no specific evidence on that subject. Where, as in this case, there is an age limitation, there is a conflict in the authorities as to the burden of proof on the question of the moral character of the complaining witness. Many of the states, including Iowa and Michigan, hold that "it is presumed that the female was of previous chaste character, or virtuous, at the time of the seduction, and that the burden of proving unchaste character or want of virtue, is on the accused": 35 Cyc. 1344, and authorities there cited. It also appears from the record that

the question as to the want of such proof by the state was not called to the attention of the trial court and that it was not pointed out in either of the motions for a directed verdict, and it is contended by counsel for the state that the question cannot be raised for the first time in this court, and should not be considered. Under our view, the decision of each of such questions is unnecessary to this opinion.

The testimony is undisputed that the girl in question was born and reared in the country, on a farm; that she had always lived at home with her parents, had attended high school at Milwaukie for two and one-half years, and was dutiful and obedient, and it is conclusive that she was of chaste character. On the question of the previous chaste character of the female, 1 C. J. 297, lays down this rule:

"It is apprehended that from the nature of the subject the more accurate statement of the rule is that, although it may be necessary to prove the fact, evidence directly upon the point is not necessary, but the fact may be shown *prima facie* by presumption from other facts and circumstances, as that the unmarried female was at the time residing with her parents or guardian or in some respectable household, or by proof of other like circumstances consistent with and the usual concomitants of chaste female character."

The girl appeared and testified before the trial court, which fully submitted the question of her "moral character," and the jury found the defendant guilty. After verdict under such a state of facts, we hold as a matter of law, that there was evidence from which the jury could find that the girl was of moral character.

3. It is next contended that it appears from the evidence that the crime, if it was committed, was rape and not fornication. Section 1912, L. O. L., provides that

"if any person over the age of sixteen years shall carnally know any female child under the age of sixteen years, or any person shall forcibly ravish any female, such person shall be deemed guilty of rape, and upon conviction thereof shall be punished," etc.

The original statute was enacted in 1864. The age of consent was raised and the present statute enacted in 1895. It will be observed that under this statute the age of consent is sixteen years and that in the instant case the testimony is undisputed that the girl was seventeen years old at the time of the commission of the crime charged in the indictment. The act further provides for the punishment of "any person" who "shall forcibly ravish any female."

Under the above instructions the jury was advised that it was one of the essential elements of fornication that—

"such carnal knowledge was not a forcible ravishing of the girl in question, because that would constitute the crime of rape, which is excluded by this indictment."

In legal effect the jury was instructed that if the acts of the defendant constituted rape he should be acquitted of the crime charged. No other instructions were requested on this point, and we must assume as a fact that the jury found the acts of the defendant did not constitute rape. There is abundant evidence to support that finding.

4. Section 1540, L. O. L., is as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime, or the circumstances of the commission."

It is contended by the defendant that the girl·was an accomplice and that there is no corroboration of her testimony as to the overt act. If it is true that, as stated in the bill of exceptions, "there was no corroboration of her testimony to the effect that the defendant had had such intercourse," no corroboration is required by the provisions of Section 2077, L. O. L. under which the defendant was indicted.

We adopt the rule laid down in 1 Blackstone, 86, cited by counsel, where it is said:

"There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy; that is, how the common law stood at the making of the act; what the mischief was, for which the common law did not provide; and what remedy the parliament hath provided to cure this mischief. And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy."

The original seduction and rape statutes were enacted in 1864 and the present rape statute, which is an amendment of the original act, was passed in 1895. The fornication statute was enacted in 1905. It is very apparent that the purpose and intent of the amendment of the rape statute and the enactment of the fornication statute were to protect further the purity and chasity of innocent maidens; that the mischief was the fact that male persons over the age of eighteen years did have carnal knowledge of female persons of previous chaste and moral character, over the age of sixteen and under the age of eighteen years, who were not their wives; and that the remedy was to prohibit and make it a crime for such male persons to have carnal knowledge of such female persons, and to make the punishment fit the crime.

Again, it was not a matter of choice with the defendant to say for which crime he should be indicted. That was for the grand jury.

As to accomplices, the rule is thus laid down in 16 C. J. 672:

"As a criminal intent is the essence of all criminal liability, one who, although he may have been in fact a participant in the commission of a crime, acted without any criminal intent, cannot be regarded as an accomplice."

The rule is thus stated in 1 McClain, Crim. Law, Section 199:

"Where a penal statute is intended for the protection of a particular class of persons, one of that class does not become an accomplice by submitting to the injury."

The latter authority is cited with approval by Judge GILBERT of the United States Circuit Court of Appeals, Ninth Circuit, in the leading case of *Diggs* v. *United States,* 220 Fed. 545–553 (136 C. C. A. 147). On the question of volition and intent 1 R. C. L. 168, says:

"In order to constitute one an accomplice, he must knowingly, voluntarily and with common intent with the principal offender unite in the commission of the crime."

In the instant case the statute was designed for the further protection of the chastity of female persons within a specified age, and by its very terms such a girl is exempt from and could not be indicted for the crime with which the defendant is charged. In legal effect this brings the question within the principle laid down by this court in the case of *State* v. *Busick,* 90 Or. 466 (177 Pac. 64). We hold that the complaining witness was not an accomplice of the defendant. Taking her testimony as true, there was an entire absence of

criminal intent on the part of the girl, and she was not conscious of the fact that a crime was being committed. She was the betrayed victim of her trusted medical adviser.

Speaking from the record, the complaining witness had a goiter and menstrual trouble, and, acting under the advice of her parents, was in search of medical relief. At the suggestion of personal friends she went to the defendant's office, accompanied by her parents, by whom the defendant was employed and paid in advance for his professional services. On his statement that the girl's condition was improving, the treatments were continued after the original contract had expired. As a rule, on her visits to the defendant's office the girl was accompanied by her mother, but on this occasion her mother went to Milwaukie to assist in Red Cross work and the girl went to the office alone.

Concerning her treatments before that day, the girl testified:

"Q. During that time did you ever have any conversation with him? Did you talk with him generally about your condition and the effect of these treatments?

"A. Every once in a while he would ask me questions and I thought it was all right for him to ask me those questions because he was a doctor, and he used to ask me how I felt and such things as that, but I never thought that was out of the ordinary, but what a doctor would ask."

Speaking of the last visit, she testified:

"And the very first thing he asked me was 'Did you come alone?' And I told him 'Yes,' and he said, 'Well, where is your mother?' I says, 'Well, I left her out to Milwaukie to sew for the Red Cross. She went to the schoolhouse there to sew for the Red Cross.'"

"Q. At that time did you think anything out of the way?

"A. No. I thought he was just the same as he always was, and I never thought anything about it. I supposed he was to be trusted."

She testified that after she had removed her clothing and he had locked the doors, during the time he was engaged in giving her what is known as a massage treatment:

"Well, then he says, 'Would you care if I did something for your own good?' and he says, 'It won't hurt you much and I will treat you as if you were my own daughter.' And he says, 'It is the only way you can get well.'"

We are not disposed to give further details. Accepting her story as true, as we must for the purpose of this opinion, the girl went into the defendant's office pure and undefiled and came out betrayed by her physician under the sham and false pretense that it was necessary to her physical recovery and that he would treat her as his own daughter.

Blackstone, 86, says:

"It is the business of the judges so to construe the act as to suppress the mischief and advance the remedy."

After a careful examination of all of the legal questions presented by learned counsel, we are convinced that the defendant had a fair trial and that in the interests of justice the judgment of the Circuit Court should be affirmed.    AFFIRMED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.