Argued May 18; reargued September 8; affirmed October 5;
rehearing denied November 2, 1937

# STATE *v.* COFFEY

(72 P. (2d) 35)

*Paul F. Burris*, of Salem, for appellant.

*Ralph E. Moody*, Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for the state.

ROSSMAN, J.   April 1 to September 15, 1935, the defendant was a sergeant in the Salem police depart-

ment. About that time one Elwood Brown, who later became a witness for the state, operated, in a cardroom in Salem, a nickle-in-the-slot machine of the kind prohibited by § 14-746, Oregon Code 1930. Evidence presented by the state indicated that Brown paid the defendant monthly sums of money in consideration of the latter's agreement not to interfere with the operation of the machine. Based upon the jury's verdict, the defendant was convicted of a violation of § 14-406, Oregon Code 1930, in harmony with the charges of the indictment. The section of our laws just mentioned prohibits public officers and servants from accepting money, valuables, etc., given for the purpose of influencing them in the discharge of their duties. The defendant contends that error was committed by the trial judge:

1. In refusing to hold that Brown was an accomplice in the commission of the crime.

2. In permitting Curtis Ferguson, a witness for the state, to testify that upon an occasion when he and Brown were in the cardroom removing the earnings of the machine, Brown, seeing the defendant waiting outside, told Ferguson to hand him ten dollars, whereupon he went out to the defendant. This was the time of the month when, according to Brown, he made monthly payments to the defendant. The challenged part is Ferguson's statement that Brown asked for ten dollars.

3. In refusing to withdraw from the jury's consideration a photostatic copy of a cancelled check in the denomination of $13.83, signed by Brown, which the state claimed was a part of the corrupt gifts.

4. In refusing permission to the defendant to introduce in evidence a judgment roll of the circuit court

in which that court refused to confiscate some slot machines.

We shall first consider the defendant's contention that the trial judge erred when he refused to instruct the jury that Brown was an accomplice in the commission of the crime charged in the indictment, and that, therefore, the jury could not base a verdict of guilty upon his testimony unless it was corroborated. The sole issue presented by this contention is whether Brown was an accomplice in the commission of the crime of which the defendant was convicted.

Section 14-405, Oregon Code 1930, provides:

"If any person shall corruptly give * * * any gift * * * to any judicial, legislative or executive officer, * * * with intent to influence the vote, opinion, decision, judgment or other official conduct of such officer, * * * such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one nor more than ten years, or by imprisonment in the county jail not less than one month nor more than one year, or by a fine of not less than $100 nor more than $1,000."

Section 14-406, Oregon Code 1930, under which the defendant was indicted, in language similar to the above, prohibits judicial, legislative and executive officers from receiving moneys, valuables, etc., which are intended to influence them in the discharge of their duties. The penalty provided is "imprisonment in the penitentiary not less than five nor more than fifteen years".

Section 13-935, Oregon Code 1930, provides that a conviction cannot be had upon the non-corroborated testimony of an accomplice.

■ As already indicated, the defendant was a sergeant in the Salem police department and was therefore,

an executive officer within the contemplation of the above section of our laws (§ 14-409, Oregon Code 1930). In the same city Brown was illegally operating a slot machine. In April, 1935, the defendant seized this machine and carried it to the police station. Later he returned it to Brown, telling him to take it out of the city. Three or four weeks later Brown returned the machine to Salem and installed it in a place known as the Model Cafe. So far the evidence is free from dispute. Brown testified that after the defendant had seized the machine he and the defendant had several conversations. We now quote from his testimony:

"Q. Why have you been so reluctant on the stand, what is the reason? A. Well, testimony of this kind can cause me an awful lot of trouble.

"Q. Now what did you pay this ten dollars a month to Coffey for? A. So the machine could run at the Model Cafe without being bothered.

"Q. And he agreed with you, did he? A. Yes, sir.

"Q. That if you would pay him ten dollars a month that he would allow the machine to run and not arrest you or bother you with it? A. Yes.

"Q. Or file any complaint against you? A. Yes, sir.

"Q. Did you pay him ten dollars a month? A. Yes, I did.

"Q. And for how many months did you pay him that ten dollars a month? A. I should imagine about seven months, possibly eight.

\* \* \*

"A. Well, the only agreement was, I was to give him ten dollars a month and if anything came up on the machines he would notify me so I could take them out.

\* \* \*

"Q. And you say it was made some time between March 7th and April 1st? A. Yes, I believe it was.

"Q. 1935? A. Yes.

"Q. Now where would you meet Coffey in order to pay him the ten dollars a month? A. He would usually come over in a car and meet me at the Model and we would talk a while regarding different situations."

We shall now refer briefly to another element of the alleged bribe. In September, 1932, the defendant incurred indebtedness amounting to $66.63 with the H. L. Stiff Furniture Company of Salem, payable $10 at the time of the opening of the account and $10 per month thereafter until the account was paid. However, on March 6, 1935, there remained unpaid the sum of $13.83, and, according to the testimony of Ralph Glover, office manager of the furniture company, the account had long been in the hands of the store's collector, W. M. Dunkle, who also was an employee of Brown. The latter swore that on Dunkle's suggestion he drew a check on March 6, 1935, for $13.83 payable to the Stiff Furniture Company, and handed it to Dunkle. The records of the store and the bank indicate that the check was duly cashed and thus the old account was discharged. Glover swore that a receipt was transmitted to the defendant and that the latter later acknowledged that he had received it. A photostatic copy of this check was received in evidence. Brown swore that he did not inform the defendant of this payment and that he intended it as a gift in appreciation of the defendant's act in returning the seized machine. Preston Hale, a witness for the defendant, under examination by the latter's attorney, swore that he was present when Brown handed Dunkle this check and that Brown at that time declared, "Coffey knew too much, that check ought to keep him quiet for a while."

■ The common law rule concerning corroboration of an accomplice's testimony did not prevent conviction

upon his sole testimony (*State v. Carr*, 28 Or. 389 (42 P. 215); Wigmore on Evidence (2d) § 2056; 1 Chitty's Criminal Law, p. 605; Hawkins' Pleas of The Crown, p. 603), but operated as a caution against conviction upon his testimony alone (Wigmore on Evidence (2d) § 2056). The caution was based upon the unreliable source of the testimony and upon a fear that the confessed criminal might be attempting to gain the conviction of an innocent man through perjured testimony in exchange for his own immunity. The rule was flexible and was a part of the trial judge's comment upon the evidence. Its origin was in the period when the general penalty—death—inclined the judge to reach out for means of protecting the accused. Moreover, at that time the defendant could not testify and, therefore, could not deny the testimony offered by the witness who proclaimed himself a partner in crime with the defendant.

In many states, of which Oregon is one, statutes, without defining the word "accomplice", require that an accomplice's testimony must be corroborated, and thereby render invalid convictions based upon his noncorroborated testimony. Our statute is § 13-935, Oregon Code 1930.

The word "accomplice" is variously defined in the decisions of the courts. Sometimes it is held that an accomplice is one who can be indicted and punished under the same statute which has been invoked against the defendant. At other times it is said that an accomplice is one who has participated in the commission of the offense, or who, while not being present, nevertheless, in some manner, aided, advised or encouraged the defendant to commit the crime. Manifestly, the second definition is more inclusive than the first. The

decisions of this court have taken note of the multiple definitions given to this term; for instance, Mr. Justice HARRIS, in *State v. Walters*, 105 Or. 662 (209 P. 349), declared: "There is no universally accepted definition of the term 'accomplice'." In 1 R. C. L., Accomplices, p. 156, § 2, the writer states that the meaning of the word "accomplice" "cannot be said to be settled".

The courts which hold that the term "accomplice" includes every person who somehow participated in the commission of the offense, even though he cannot be indicted for the offense charged against the defendant, experience great difficulty with the definition, due to its sweeping character. They are continually compelled to create exceptions in order to prevent the rule from exonerating the guilty. Necessity rather than reason dictates the exception. For instance, they hold that the prostitute kept in a house of ill fame is not an accomplice of the person charged with its operation; that a woman who voluntarily submits to an operation for an abortion is not an accomplice of the physician who performed it; that a woman, transported in violation of the white slave act for immoral purposes, is not an accomplice of the one charged under the act, even though her participation was voluntary; and that the prostitute is not an accomplice of the man charged with having lived off her earnings. The courts, in creating these exceptions, state that the woman is the victim of the crime. Likewise, these courts hold that the players in a poker game are not accomplices of the one charged with gambling; they argue that the players are playing against one another. They also hold that the purchaser of articles sold in violation of statute (liquor, drugs, stolen goods, etc.) is not an accomplice of the seller, insisting that purchase and sale are two

transactions. These instances, to which others could readily be added, are sufficient to indicate the difficulty which the courts have encountered with the broad definition sometimes given to the word "accomplice". The exceptions seem to be purely arbitrary, if we accept as the basis for the exclusion of the accomplice's testimony a belief that he is an unreliable source of the truth, and that he may have agreed to perjure himself in order to gain his own immunity. Thus, whether she be victim or not, the woman who terms herself a prostitute may be giving perjured testimony against the defendant for revenge or to serve her own purposes. And if one can overcome the difficulties and subscribe to a belief that fellow poker players are not aiding and abetting in the commission of the crime of gambling because each is playing against the others, nevertheless, this is no proof that the self-confessed gambler has not bargained for his immunity. Likewise, if the simultaneous purchase and sale of narcotic drugs, stolen goods, liquor, etc., constitute two transactions, nevertheless, the buyer or seller who testifies concerning the matter may be prompted by improper motives. Further, if it is possible to deem the woman a victim who swears that she permitted the defendant to transport her for an immoral purpose, it still remains true that she may be giving false testimony not only concerning herself but concerning the defendant also. For these reasons the exceptions appear to be arbitrary and are evidently created by necessity.

In determining which of the two above definitions this court has embraced, it will be more useful to take note of the actual facts in each case than to quote the definitions which were given to the word "accomplice". A brief review will now be undertaken of all of our

previous decisions wherein the court was confronted with the problem of whether an accomplice is (a) one who can be indicted and punished under the same statute which the defendant is charged with having violated; or (b) whether he is one who somehow aided, abetted or encouraged the defendant in the latter's commission of the crime, but who cannot be punished under the statute violated by the defendant.

In *State v. Moxley*, 54 Or. 409 (103 P. 655, 20 Ann. Cas. 593), this court held that the receiver of stolen goods was not an accomplice of the defendant thief, stating that "in a state like ours, where the statute by its terms has made larceny and the receiving of stolen goods distinct and substantive offenses" the buyer is not an accomplice of the thief.

In *State v. Light*, 17 Or. 358 (21 P. 132), the decision held that the dealer in a game of stud poker was an accomplice of the player-defendant, pointing out:

"The witness McDonaugh was indictable and liable to the same punishment for dealing the game which was played for money, checks, credits or other representations of value."

In *State v. Wilson*, 113 Or. 450 (230 P. 810, 233 P. 259, 39 A. L. R. 84), the woman who had voluntarily submitted to an operation for an abortion was held not an accomplice of the defendant physician. The decision did not term her a victim of the crime, but quoted the statute which rendered the defendant's act punishable without providing punishment for the woman; in other words, she could not have been indicted and punished under the statute which the defendant had violated.

In *State v. Jarvis*, 18 Or. 360 (23 P. 251), the defendant who had been convicted of the crime of incest,

claimed that the trial court erred when it refused to deem his daughter an accomplice in the commission of the crime. This court, after quoting a section of our laws which made father and daughter equally guilty, and which provided the same punishment for each, held that error had been committed.

In *State v. Scott,* 28 Or. 331 (42 P. 1), the decision, after citing Hill's Code, § 680, which provides for woman and man who commit the crime of adultery the same penalty, held that the woman's testimony against the defendant showed that she was his accomplice. See to same effect *State v. Case,* 61 Or. 265 (122 P. 304), and *State v. Wakefield,* 111 Or. 615 (228 P. 115).

In *State v. Mallory,* 92 Or. 133 (180 P. 99), the defendant, who had been convicted of the crime of fornication defined by § 2077 L. O. L., which is now § 14-707, Oregon Code 1930, claimed that the girl was an accomplice. The decision, in rejecting that contention, pointed out that the girl could not "be indicted for the crime with which the defendant is charged".

*State v. Busick,* 90 Or. 466 (177 P. 64), and *State v. Edlund,* 81 Or. 614 (160 P. 534), held that the purchaser of illegal intoxicating liquor was not an accomplice of his vendor, the defendant on trial, pointing out that our laws did not render the purchaser punishable.

In *State v. Carr,* 28 Or. 389 (42 P. 215), one Mrs. Thomas Huntington, who, as agent for the defendant, endeavored to bribe her husband while he was serving as a juror, was held an accomplice of the defendant. Manifestly, as the decision indicated, she was subject to prosecution under the same statute which the defendant was accused of having violated.

In *State v. Turnbow,* 99 Or. 270 (193 P. 485, 195 P. 569), the defendant, who had been convicted of the

crime of assault with intent to rob, claimed that error was committed when the court refused to hold that one Kathryn Moss, a witness for the state, was an accomplice. The individual just mentioned, like the woman in the case last reviewed, had participated in the commission of the crime. In holding that she was an accomplice, the decision stated:

"The testimony in this case plainly discloses that Kathryn Moss * * * could have been indicted and punished for the crime of assault with intent to rob Neeley, and was therefore an accomplice."

In *State v. Odell,* 8 Or. 30, the defendant, jointly indicted with one Moran of the crime of larceny in a store, claimed that error was committed when the trial court failed to hold that one George, a witness for the state, was an accomplice in the commission of the crime. George testified that he and the defendant, pursuant to agreement, took their places in front of the store as lookouts while Moran robbed it, and that as the goods were brought forth all three men loaded them into a wagon and carted them away. Manifestly, George was subject to indictment and punishment under the same statute which the defendant was charged with having violated. The decision held that he was an accomplice.

In *State v. Roberts,* 15 Or. 187 (13 P. 896), the defendant, accused of the crime of arson, called as a witness one Almira Burnys, who had accidentally overheard the defendant and her husband plan the crime. In rejecting, upon appeal, the defendant's contention that she was an accomplice, the decision stated:

"Mrs. Burnys did not counsel, aid or abet in any way; did not in any manner participate in the crime; and her knowledge of it was derived from the accident of being the wife of one of the criminals."

In other words, she could not have been indicted under the statute which was being applied against the defendant.

In *State v. Walters,* 105 Or. 662 (209 P. 349), the defendant and one John Tillman, after making three holdups upon the streets of Portland in the course of two hours, were overtaken by two police officers who desired to question them. Tillman stopped and submitted to the officers' directions, but the defendant refused and, whipping out a gun, killed one of the officers. He claimed that Tillman, who was called by the state as a witness, was an accomplice in the commission of the homicide. The decision, written by Mr. Justice HARRIS, held otherwise in the following language:

"As a general rule the test as to whether a witness is an accomplice is whether he himself could be indicted and punished for the crime for which the accused is being tried. If he could be so tried and punished, then he is an accomplice; if he could not, then he is not an accomplice: State v. Turnbow, 99 Or. 270, 280 (193 Pac. 485, 195 Pac. 569); Stone v. State, 118 Ga. 705 (45 S. E. 630, 98 Am. St. Rep. 145); 1 R. C. L. 157.

"Tillman was an accomplice in the commission of the three robberies; but the record does not disclose a word of evidence having the slightest tendency to show that he participated in or was connected with the homicide. Tillman was not an accomplice in the killing of Palmer, and, therefore, the trial judge properly omitted to instruct the jury about viewing the testimony of an accomplice with distrust."

In *State v. Stacey,* 153 Or. 449 (56 P. (2d) 1152), the defendant and one Lapove were jointly indicted for the crime of receiving stolen property. Lapove's wife was called as a witness against Stacey. The latter claimed that she was an accomplice and thereupon, un-

der appropriate instructions, the issue was submitted to the jury. It is evident that if she was an accomplice she could have been indicted and punished for the same offense which was charged against the defendant. This disposition of the contention was approved by this court.

█ The above review of our earlier decisions clearly indicates that they have never given effect to the broad definition of the term "accomplice" for which the defendant contends. It is true that this court has many times mentioned or quoted that definition, but when it came to the actual application of a test it employed the narrower definition. Further, some of our decisions are erroneous if the broader definition is the correct one. But all of them harmonize with the definition which deems only those to be accomplices who can be indicted and punished under the same statute which is being invoked against the defendant. Moreover, by reverting to the reviewed decisions, it will be observed that this court has never taken note of any of the exceptions employed by the courts which adopted the broader rule. For instance, in the sexual crime cases this court did not classify the woman as a victim when it held that she was not accomplice in the commission of the crimes of abortion and fornication, but that when she participated in the commission of the crimes of incest and of adultery she was an accomplice. Likewise, it did not declare, apart from the applicable statute, that purchase and sale constituted two transactions when it held that the buyer of illegal liquor was not an accomplice of his vendor; nor did it brand purchase and sale two transactions when it held that the receiver of stolen goods was not an accomplice in the commission of the theft. In all of these instances the

test which was applied was: could the alleged accomplice be indicted and punished for the crime charged against the defendant? Manifestly, in all of these instances it deemed that different legislative treatment of the participants indicated a separation of the criminal transaction into its component parts. Where a statute expressly deals with conduct which, apart from the statute, might constitute complicity in a crime, the individual responsible for the conduct will not be dealt with as an accomplice, but as the statute itself indicates: 16 C. J., Criminal Law, p. 121, § 103. For the reason just mentioned it was impossible to deem the purchaser of the illegal liquor an accomplice of his vendor, although his offer to purchase and his display of money encouraged the vendor to commit his crime. For similar reasons the thief is to be dealt with as a larcenist and not as an accomplice of the one who is charged with receiving the stolen goods.

This court has never been required to determine whether a bribe giver is an accomplice in the commission of the crime prohibited by § 14-406, Oregon Code 1930, the essence of which is quoted in a preceding paragraph, but the same legal principles which governed the decisions digested in earlier parts of this decision seem equally applicable to that question. Other courts have passed upon the problem now before us, and a review of many of their decisions is set forth in the extensive annotation accompanying *State v. Sweeney,* 73 A. L. R. 380 (180 Minn. 450, 231 N. W. 225). In the following decisions the bribe giver was held to have been an accomplice of the bribe taker: *People v. Coffey,* 161 Cal. 433 (119 P. 901, 39 L. R. A. (N. S.) 704); *Egan v. U. S.,* 52 App. D. C. 384, 287 Fed. 958; *People v. Bissert,* 71 App. Div. 118 (75 N. Y. S. 630) (affirmed with-

472

out opinion, 172 N. Y. 643 (65 N. E. 1120); *Morawietz v. State,* 46 Tex. Crim. Rep. 436 (80 S. W. 997). In the decision last cited the court held that the giver of the bribe, a deputy sheriff who shared in it, and the person who loaned to the bribe giver a part of the money which constituted the bribe, were all three accomplices of the defendant bribe taker. In the following decisions the courts held that the bribe giver was not an accomplice of the bribe taker: *State v. Sweeney,* 180 Minn. 450 (231 N. W. 225, 73 A. L. R. 380); *State v. Morrison,* 175 Wash. 656 (27 P. (2d) 1065); *State v. Emory,* 55 Idaho 649 (46 P. (2d) 67). We have cited only one decision from each jurisdiction. The others may be found in the decisions already cited and in the annotation above mentioned.

In determining the importance of *Egan v. U. S.,* supra, it should be borne in mind that the court was there concerned merely with the common law cautionary rule and not with any statute requiring corroboration. Possibly, it is not improper to add that shortly following the announcement of the decision entitled *People v. Coffey,* the California legislature enacted a statute (Stats. 1915, p. 760) which defined an accomplice as one "who is liable to prosecution for the identical offense charged against the defendant".

The most cited case holding that the bribe giver is an accomplice of the bribe taker is the one last mentioned. Its essence is stated in the following passage quoted from that decision:

"One is an accomplice in a crime because of the part that he has taken in it, not because he may be indicted as a principal. The latter is a mere accidental circumstance, depending upon the language of the statute, and in no way affecting the true touchstone; namely, the part which the accomplice has taken in the offense."

Thus, the court believed that since the act of the bribe giver in offering the bribe encouraged the public official to commit the crime of bribery, he thereby became an accomplice in the commission of that crime, whether or not he was subject to punishment for it.

The reasoning that persuaded the Minnesota, Washington and Idaho courts to hold that the bribe giver is not an accomplice of the bribe taker is indicated in the following paragraph taken from *State v. Sweeney,* supra:

"But under our statute giving a bribe and accepting a bribe are separate offenses, and if Maurer were to be indicted for giving the bribe it would be under G. S. 1923, § 9982. Under our decisions Maurer was not an accomplice in the legal significance contemplated by the statute."

In other words, those courts took the view that where the legislature has dealt with the common law crime of bribery by enacting two statutes, one rendering it unlawful to give a bribe and another rendering it unlawful for a public officer to accept a bribe, the two offenses are separate, and each of the parties is to be dealt with according to the statute applicable to him and not under the statute applicable to the other. The reasoning of the court was very similar to that in which this court engaged when it held that the buyer of illegal intoxicating liquor was not an accomplice of the seller in the latter's commission of the crime of violating the prohibition statute.

■ It is obvious from a reading of *People v. Coffey,* supra, that the California court was much influenced by the common law definition of the term "accomplice". But when that definition took its shape the environment was very different from that into which the Cal-

474

ifornia court transplanted the old definition. The old rule that the court could comment upon the evidence out of which the rule itself evolved was gone; execution upon the gallows—the general penalty—which made courts lean backward was also gone; the rule excluding the defendant from the witness stand had been supplanted by a rule which not only permitted him to testify but which also afforded him special protection upon cross-examination; and, finally, the common law crime of bribery had been abolished by legislative enactments which penalized the following acts: (a) that of one who makes a gift to a public officer for the purpose of influencing the latter; and (b) that of a public officer who corruptly accepts a gift. Due to these changes which have occurred since the common law definition was formed, we do not believe that we are forced to place the common law definition upon the word "accomplice" as it occurs in § 13-935, Oregon Code 1930. If we adopt the definition which deems one an accomplice who has somehow participated in the crime, although he cannot be indicted under the same statute which the defendant is accused of having violated, then, as can be seen from the numerous exceptions which accompany the rule, we embrace a treacherous definition. If the Oregon decisions reviewed in a preceding paragraph do not clearly indicate that this court has rejected that definition in favor of one which defines an accomplice as a person who can be indicted under the statute invoked against the defendant, at least, the legislature could have gleaned from those decisions that the trend of our opinion was in that direction. When the California court, in *People v. Coffey*, supra, announced its interpretation of the term "accomplice", the legislature promptly manifested its disapproval by

enacting a statute which defined the word "accomplice" as one who can be indicted under the same statute with the defendant. But after our numerous decisions had been announced, the legislature made no change in the statute, from which circumstance it is possible to infer that it favored the interpretation we were embracing.

The definition which deems only those to be accomplices who have so far participated in the commission of the crime charged against the defendant that they, too, can be indicted and punished under the statute invoked against him (1) rejects a definition which took its form in a very different environment; (2) is workable and avoids the necessity of resorting to the numerous exceptions attendant upon the other definitions; (3) is in harmony with our earlier decisions, all of which are reconcilable with it; (4) does not deem one to be an accomplice in the commission of a crime for which he cannot be indicted and punished; and (5) enables the jury, without jeopardizing the interests of the defendant to any greater extent than is done in other instances where a self-confessed wrongdoer testifies, to consider the evidence without the restraint of an arbitrary rule, except where witness and defendant are subject to punishment under the same statute, a result which Wigmore on Evidence (2d), § 2056, deems desirable.

■■ For the reasons just stated, we believe that within the contemplation of § 13-935, Oregon Code 1930, a person is not an accomplice unless he can be indicted and punished under the same statute which is being employed against the defendant. That being our belief, it follows that Brown was not the defendant's accomplice in the commission of the crime described in

the indictment. We conclude that the assignment of error now under consideration is without merit.

■ The second assignment of error is based upon a ruling which permitted Curtis Ferguson, a witness for the state, to testify that upon an occasion when he and Brown were in the Model Cafe removing the earnings from the slot machine, Brown, seeing the defendant waiting outside, asked Ferguson to hand him ten dollars of the money before he went out to see the defendant. Apparently, Brown had momentarily walked away from the machine and then, seeing or having his attention directed to the defendant, returned to Ferguson, asked for the money, and promptly went out to the defendant's car where he visited with him. The only part to which the defendant objects is Ferguson's statement that Brown asked for ten dollars, which he insists constituted hearsay evidence. Brown, referring to this incident, had sworn that after his attention had been attracted to the defendant he obtained ten dollars and went out and handed it to him. He also testified that he visited with the defendant in his car, and added that the sidewalk in front of the Model Cafe was the place where he usually made the monthly payments to the defendant. In our opinion, Brown's request for the ten dollars after he had seen the defendant waiting outside was a verbal act (Wigmore on Evidence (2d), §§ 1772 to 1778) which lent character and significance to his subsequent conduct in walking out to and visiting with the defendant. His request for the money possesses no different significance than if, after punching a cash register upon the appropriate key, he had taken out ten dollars. Being a verbal act, which lent significance to equivocal acts, his request for the money was admissible as evidence: *State v. Sweeney,* supra; *State*

*v. Farnam*, 82 Or. 211 (161 P. 417, Ann. Cas. 1918A 318).

■ The third assignment of error is based upon a contention that the circuit court erred when it refused, upon the defendant's motion at the completion of the trial, to instruct the jury that the photostatic copy of the check for $13.83, which we have already described, and all testimony concerning it was withdrawn from the jury's consideration. The contention is based upon an argument that the check was a gift which Brown had made to the defendant in appreciation of the latter's act in returning the slot machine. But we believe that the testimony of the defendant's own witness, Preston Hale, from a portion of which we have already quoted, indicates that the check was not given as a gift, but to induce the defendant to neglect his duty. Other circumstances also disclose that the check was not a gift. For instance, the defendant swore that he knew nothing about it until after the grand jury had begun its investigation of his conduct. Brown attempted, in part, to corroborate this explanation. A gift of appreciation would not have been shrouded in such secrecy—at least, the jury could have so inferred. The court committed no error when it refused to give the requested instruction.

■ The last contention advanced by the defendant suggests that the circuit court erred when it refused to permit him to introduce in evidence a judgment record in a case which his offer of proof described as "Case No. 22165, Marion County Circuit Court Records entitled Emon Chaloupka versus O. D. Bower, Sheriff". The offer of proof states that in this judgment the court ordered some Salem police officers to return "the so-called slot machines to their owners and were

advised that the right of confiscation of such property did not exist''. There is no contention that any party in the case just mentioned was a party to the present proceeding; nor does the record contain any description of the machines which were affected by the judgment roll mentioned by the defendant. Likewise, the record neither indicates the nature of the action resulting in the above-mentioned judgment nor the issue which resulted in it. Under these circumstances, the judgment roll was immaterial to any issue in this case. We are clearly satisfied that the court did not err when it excluded the judgment roll.

Having found no merit in any of the defendant's contentions, the judgment of the circuit court is affirmed.

BEAN, C. J., and BAILEY, LUSK, RAND, KELLY and BELT, JJ., concur.