STATE v. CHARLES H. HUNTER.[1]

December 3, 1915.

Nos. 19,467—(4).

**Manslaughter — verdict sustained by evidence.**

1. In a prosecution for manslaughter, resulting from an abortion committed upon a pregnant woman, it is *held* that the evidence supports the verdict of guilty.

**Evidence — res gestae.**

2. Declarations made by the woman during the time she was under treatment and before the final act of abortion was committed, to the effect that defendant was her physician, had treated her for the purpose of bringing about a miscarriage, and was to administer to her further treatment for that purpose, *held* properly admitted in evidence as a part of the *res gestae*.

**No error.**

3. The record presents no reversible error.

Defendant and another were indicted by the grand jury for the crime of murder in the first degree, tried in the district court for Hennepin county before Jelley, J., and a jury which rendered a verdict of guilty as charged in the indictment. From the order denying his motion for a new trial, defendant appealed. Affirmed.

*Larrabee & Davies, Cassius M. Ferguson* and *Floyd B. Olson,* for appellant.

*Lyndon A. Smith,* Attorney General, *John M. Rees,* County Attorney, and *George W. Armstrong,* Assistant County Attorney, for respondent.

BROWN, C. J.

Defendant was convicted of the crime of manslaughter and appealed from an order denying a new trial.

It is contended by defendant: (1) That the evidence is insufficient to justify the verdict, or to show, beyond a reasonable doubt, that defendant is guilty of the crime charged; (2) that the trial court erred in its rulings on the admission and exclusion of evidence, and (3) that there

[1]Reported in 154 N. W. 1083.

Note.—As to homicide in commission of, or attempt to commit, abortion, see notes in 63 L.R. 902; and 49 L.R.A.(N.S.) 580.

As to admissibility of declarations of one upon whom an abortion is committed, against others charged with complicity therein, see note in 35 L.R.A. (N.S.) 1084.

was error in the denial of a new trial on the ground of newly discovered evidence.

1. The contention that the evidence is insufficient to justify the verdict is not sustained. We do not deem it necessary to discuss the evidence in detail. It would serve no useful purpose. But the principal facts are substantially as follows: An unmarried young woman found herself in an embarrassing situation, and sought relief by means of a surgical operation. Some one performed that operation, and as a result thereof she died. Defendant was accused and on the trial found guilty. It appears without dispute that the young woman was pregnant and the purpose of the operation, which she earnestly desired, was to protect her name and to avoid the disgrace which would follow from the birth of a child out of wedlock. And in this connection we may remark, in disposing of one of defendant's contentions on this branch of the case, that the evidence is quite conclusive that the operation was not performed to save the life of the young woman or that of the unborn child, but rather, as just stated, to save the name and reputation of the pregnant woman. With this remark we pass that feature of the case. State v. Lee, 69 Conn. 186, 37 Atl. 75; Hatchard v. State, 79 Wis. 357, 48 N. W. 380. The evidence tending to connect defendant with the operation is in the main circumstantial, but sufficient in our opinion to sustain the conviction. The evidence shows, without controversy, that deceased, upon learning her condition, applied to defendant for help and requested him to perform the operation, and thus relieve her. She borrowed money of a relative to whom she confided her trouble. She stated to this relative, and to one or two other persons, the condition she was in and that defendant was her physician. That defendant treated her at her request is not disputed, though it is claimed that the evidence fails wholly to show that he performed the illegal operation. Defendant did not take the stand as a witness. He was not required to do so and no inferences can be drawn against him for his failure to testify. Yet we find him at her bedside at the time of her death, rendering such aid as he was able to render at that time. He knew her condition and knew that she had been in search of some one who would perform the operation; and he must have known, when attending her for a time immediately prior and up to the moment of her death, that the operation had been performed and that she died

from its effects, yet he deliberately certified to the public authorities in a death certificate that the cause of death was pneumonia. From this the jury was justified in adopting one of two conclusions; namely, that by this false certificate defendant was attempting to protect himself, or to protect the person, known to him, who in fact performed the operation. In our view of the evidence, taken as a whole, it cannot well be said that the jury improperly concluded that defendant was thus attempting to cover up the illegal operation and to shield and protect himself. The intention of deceased to have on operation performed and that she applied to defendant therefor, and had been treated by him, is shown by certain declarations of deceased, reference to which will be made later in the opinion in connection with the contention that it was improperly received. There is evidence tending to exonerate defendant and to show that the operation was performed by a person other than defendant, described by the witness who vouched for the fact as a strange man who came to the rooming house where deceased was lodging, late in the evening a day or so before she died. This strange man remained in her room for about an hour and then departed without making known his identity. The morning following this visit the bed clothes on the bed occupied by deceased were found in a bloody condition. There is also evidence that deceased had applied to others for assistance and relief, but she did not obtain it, at least so far as disclosed by the record, unless it was from the strange man just mentioned, the evidence in reference to whom was for the consideration of the jury. There is also evidence that defendant refused to perform the operation and that he advised deceased to dismiss thoughts thereof, and promised that after the birth of the child he would make an effort to secure its adoption, and thus relieve deceased from disgrace. This refusal to perform the operation, and the advice given, appear from the testimony of a maid in attendance at defendant's office. This witness testified that a day or so prior to her death, the young woman called at defendant's office in company with a young man, and that after admitting them she overheard the following conversation between defendant and deceased:

Q. "Now tell us what you heard?

A. "Well, I heard her say: 'This man of mine won't believe me when I tell him that you won't help me out, so I brought him up here to hear for himself.'

Q. "Then what?

A. "Then the doctor said: 'You know what I can do for you, just as I told you before. Go through with it like a woman the full period and I will care for you and see that the baby is adopted.' I can't say exactly the words, but something like that, and the young man said: 'Well, that is a damned shame.' "

Just why deceased should consider it necessary to enact this scene, and to thus convince her friend that defendant had refused to aid her is not made clear by the evidence. The jury may have concluded that it was defensive matter prepared in advance. In any event, if such refusal was made and advice given, deceased did not acquiesce therein. She insisted upon, and obtained, immediate relief, and the operation was performed. But we need go no further upon this branch of the case. There are other items of evidence, and circumstances tending to establish defendant's guilt and in a measure to exculpate him, but all thereof were for the consideration of the jury, including the weight and credit to be given the testimony of the several witnesses. And our conclusion is that, since the verdict has received the approval of the trial judge, it must stand.

2. The state called witness Liesch, an acquaintance and friend of deceased, who was permitted, over the objection and exception of defendant, to testify to the following conversation had with deceased on Wednesday before her death:

Q. "And it was Wednesday prior to that time that you first went to the Hampshire Arms as you have testified? A. Yes.

Q. "Now then on that occasion prior to going to Hampshire Arms, did you have any talk or conversation with Miss Kummer (deceased) relative to her condition and with regard to her intention and purpose in going to the Hampshire Arms? A. I did.

Q. "Will you tell us what she said? * * *

A. "She told me that she was in trouble. I asked her what the trouble was, and she says female trouble, that she was in the family way; * * * I asked her who she was going to see and she told me.

Q. "What did she say?

A. "She said Dr. Hunter; and I asked her who sent her there and she said her cousin, Mr. Wagner."

The witness again met deceased on the following Friday when he had another conversation with her, and over defendant's objection was permitted to testify that she then stated to him, "that she was going to see Dr. Hunter that night. Dr. Hunter was coming down there and she was going to take the last treatment." Witness Kummer, a cousin of deceased, was permitted to give similar evidence, and of conversations with deceased as late as the day before the final operation was performed, in which deceased stated that Dr. Hunter was her physician, had given her three injections, and that she was to pay the doctor $75 for his services. Another state witness gave similar testimony, all over defendant's objection as incompetent and hearsay.

It is urged that this testimony was hearsay, and that the admission thereof was reversible error. We have given this contention full and careful consideration, for it is the claim mostly relied upon by defendant as ground for a new trial, and are unable to concur in the claim of error.

The rule invoked by defendant, namely, that hearsay evidence is inadmissible in a court of justice, is a rule of fundamental law. It is a rule of the common law, supported as to criminal prosecutions, by the constitutional guarantee that the accused is entitled to be confronted with the witnesses against him. The wisdom of the rule is not to be questioned or its importance minimized, for its observance is necessary to the protection of litigants and the orderly administration of the law upon the basis of truth, as disclosed by the testimony of living witnesses, and from first rather than second hand evidence. Yet the rule has its limitations and exceptions and is not inflexible in its operation. Dying declarations of a person, tending to show the cause and manner of his death, not made in the presence of the person accused of his murder, though strictly hearsay, are uniformly admitted upon a proper foundation being laid. 10 Am. & Eng. Enc. (2d ed.) 373. And, where a conspiracy is shown between two or more persons to do an unlawful act, the declarations of one, since deceased, made in furtherance of the conspiracy, are admissible against the coconspirators, though they were not present at the time the declarations were made. State v. Crofford, 133

Iowa, 478, 110 N. W. 921. The rule is often applied in prosecutions for abortion. 1 C. J. 325. And again, such declarations under particular restrictions are admissible when clearly shown to be a part of the *res gestae.* This rule, as remarked in 2 Jones, Com. on Evidence, § 344, "is a law unto itself, consisting of many of the ordinary rules of evidence, but primarily of relevancy; apparently setting at naught many of the exceptions, but in reality presenting a complete system of self-regulation to meet the necessities and demands of complete proof." And though in fact hearsay, in a strict technical view, "it is admitted because without it a clear understanding of the nature of the litigated act cannot be had, and to obtain this should, of course, be the prime object of all rules of evidence." The declarations must have immediate relevancy to the subject matter in litigation and be of a character to illustrate, explain, or interpret the transaction of which the fact evidenced by the declarations forms a part. The declarations must appear to have been made pending the transaction, as a part thereof, and under circumstances free from suspicion of fabrication, and not merely declaratory of a completed past affair. 2 Jones, Com. on Ev. § 345. If all these essentials appear, the evidence is treated by the weight of authority as a part of the *res gestae* and admissible. The entire subject is clearly and fully covered in 2 Jones, Com. on Ev. § 344, et seq., where many of the authorities are cited.

Within this rule of *res gestae,* we think, and so hold, that all the declarations of deceased here complained of were properly admitted in evidence, not as original evidence that defendant performed the illegal operation, but as disclosing an intent on the part of deceased to have it performed, and opportunity by defendant to perform the same. All such declarations were made during the transaction, and though some thereof related to things that had been done looking to the procurement of the miscarriage, all had reference to the single purpose, were explanatory of the thing intended to be accomplished by deceased, none were made after the final act had been committed by defendant, and the record furnishes no suggestion of fabrication. The adjudicated cases sustain the admission of such declarations under like circumstances. In State v. Dickinson, 41 Wis. 299, a substantially similar situation was presented. It there appeared that the woman upon whom an abortion had been performed

stated to a room-mate and friend that she was in the family way, had been to see defendant who had treated her, and that she was going to his office the day following to receive the final treatment. The court, in a carefully prepared opinion by Mr. Justice Cole, sustained the ruling of the trial court in admitting the evidence; the theory of the court being that the declarations formed a part of the *res gestae*. A like situation was presented in State v. Power, 24 Wash. 34, 63 Pac. 1112, 63 L.R.A. 902. In that case the deceased stated to her sister that she was in trouble and was going to defendant for treatment. She was pregnant, and her purpose in seeking treatment at the hands of defendant was to be relieved therefrom. There, as in the case at bar, the court properly restricted the purpose and effect of the evidence in its charge to the jury. In State v. Gilmore, 151 Iowa, 618, 132 N. W. 53, 35 L.R.A. (N.S.) 1084, an attempt was made to sustain the admission of such declarations on the theory of a conspiracy between deceased and the doctor, but the court held that the conspiracy was not shown. The court, however, added that, had it appeared that the declarations had been made before the final act producing the abortion, they would have been admissible. In the case at bar all the declarations received in evidence had reference to treatment given and to be given, and were made, not after the completed act, but during the time treatment was being administered and before the final act had been committed. There is no evidence that she made any statements subsequently, but all thereof were made during the pendency of the criminal enterprise. In Salander v. People, 2 Colo. 48, and Johnson v. State, 33 Colo. 224, 80 Pac. 133, 108 Am. St. 85, similar declarations were admitted by the trial court and sustained on appeal. While in the Colorado decisions the court seems to have applied the rule of conspiracy, and held that the declarations of one conspirator were admissiable against the other, that is not a differentiating fact since the rule of *res gestae* is more comprehensive with an equally logical foundation for its support. Other cases in point are State v. Howard, 32 Vt. 380; State v. Ryder, 80 Vt. 422, 68 Atl. 652; Weightnovel v. State, 46 Fla. 1, 35 South. 856; and those cited in State v. Gilmore, 151 Iowa, 618, 132 N. W. 53, 35 L.R.A. (N.S.) 1084; 3 Wigmore, Ev. § 1725. The rule applied in State v. Hayward, 62 Minn. 474, 65 N. W. 63, sustains the admission of the declarations, though in that case the statements re-

ceived had reference solely to an engagement deceased had to meet defendant on the day she met her death. There is nothing in State v. Gallehugh, 89 Minn. 212, 94 N. W. 723; State v. Williams, 96 Minn. 351, 105 N. W. 265, or State v. Bly, 99 Minn. 74, 108 N. W. 833, in conflict with the conclusion here reached. In the latter case the declarations of the deceased had no immediate relation to the transaction with defendant, but concerned in the main efforts she had made to get rid of her unborn child. The case is not here in point

We are fully aware of the fact that the authorities are not in full harmony upon the question, but the rule we apply seems sound in principle and is supported by the weight of authority as well as by reason. For the most part the cases cited by defendant were disposed of upon the ground that the declarations sought to be introduced were made after the operation and were treated as declaratory of a past and completed transaction, and for that reason inadmissible as hearsay. People v. Davis, 56 N. Y. 95; People v. Fritch, 170 Mich. 258, 136 N. W. 493, and other like cases found in the note at 35 L.R.A.(N.S.) 1084, supra. That rule is not to be questioned, but it is inapplicable to the case at bar. All the declarations here involved were made pending the transaction and before the final act was committed, and tended to explain and throw light thereon, and were uttered under circumstances tending to vouch for their truth and verity. And though, as heretofore stated, one or two items of the declarations related to what had occurred between deceased and defendant, they in fact formed part of one entire transaction, and we are unable, as was done by the supreme court of Michigan in People v. Fritch, supra, to eliminate therefrom the part relating to what had been done from those things which were to be done in furtherance of the common object, and declare the admission of the former fatal error. The situation might be different had the declarations related solely to things already accomplished. But since they formed part of one continuous transaction and all related to the single purpose then under way, namely, the procurement of the miscarriage of deceased, nothing but a technical application of the rules of evidence will exclude any part thereof. If declarations that deceased intended to and was on her way to defendant's office for relief are competent as a part of the *res gestae,* and this seems to be conceded, then declarations that he was treat-

ing her are equally competent, for they tend in the same direction and to explain her conduct, purpose and intent in applying to and receiving treatment from him.

3. There was no error in the exclusion of the evidence of witness Dr. Peck. Defendant offered to show by this witness that one Wagner, who the testimony tends to show was responsible for the unfortunate condition of deceased, stated to him that deceased had applied to defendant for relief and that defendant had refused to perform the abortion. Wagner, so far as the evidence discloses, was not involved in the efforts to procure aid from defendant; there is no evidence that he applied to defendant in behalf of deceased, and his only information as to what transaction took place between deceased and defendant necessarily came from statements made to him by deceased. Had Wagner been called as a witness to state what deceased said to him, undoubtedly the court would have admitted the evidence. But the court was clearly right in excluding third hand declarations.

4. The motion for a new trial was in part based upon the ground of newly discovered evidence. This was addressed to the discretion of the court. The affidavits in support thereof tend to the discredit of one or more of the witnesses of the state, and also to exonerate defendant. We have examined them with care and are unable to hold that the court abused its discretion in denying a new trial on this ground.

5. This covers all that we are required to say in disposing of the case. We have examined with special pains all the arguments of counsel for defendant, earnestly and sincerely made, and for the reasons stated are unable to concur in his conclusions.

Order affirmed.