# STATE v. C. D. WHIPPLE.[1]

## August 22, 1919.

## No. 21,135.

**Sale of narcotics forbidden — prescription by physician.**

1. Section 1, chapter 260, Laws 1915, forbids the sale of narcotic drugs, but provides that pharmacists may dispense the same upon the written prescription of a physician, and that a physician may administer such drug to a patient upon whom he is in professional attendance. There are exacting requirements as to records to be kept in both cases. Section 2 forbids any physician to furnish or prescribe any such drugs for the use of an habitual user, provided this shall not prevent a physician from prescribing in good faith for the use of any patient for treatment of the drug habit such substances as he may deem necessary.

**Same — when patient is habitual user — charge to jury.**

2. It was proper to instruct the jury that the statute makes a distinction between the dispensation of these drugs to habitual users and to ordinary patients; that, in the case of patients not addicted, the physician may prescribe them and also furnish them, but that in case of habitual users he may not furnish the drug, but may only give a prescription to be filled by a pharmacist under the safeguards imposed by the law.

**Criminal law — evidence of other offenses.**

3. It was proper in this case to receive evidence of other sales of narcotics to the same addict and of other sales to other addicts. Such evidence was within the rule which permits evidence of this character when it is part of one scheme to violate the law or when it tends to show an inclination or predisposition to violate the law.

**Same — construction of statute — charge to jury.**

4. It was not reversible error to instruct the jury that when a law is a new one and subject to misinterpretation that is not a defense.

**Poison — evidence.**

5. The court refused to receive in evidence a stamp with which defendant said he stamped all containers of such drugs dispensed by him. A package found on the person to whom, it is charged, defendant sold morphine, bore no stamp, but it is admitted that defendant fur-

[1]Reported in 173 N. W. 801.

nished him the quantity of the drug found in his possession. *Held* no error.

**Poison — "prescribe" and "furnish" in statute.**
> 6. The words "prescribe" and "furnish," as used in Laws 1915, c. 260, § 2 (G. S. Supp. 1917, § 8965-2), which forbids any physician to prescribe or furnish narcotic drugs for use of an habitual user, are used in their ordinary sense; "prescribe" meaning to give medical direction, to indicate remedies, and "furnish" meaning to supply or provide.

Defendant was indicted by the grand jury of Hennepin county charged with the crime of furnishing and selling narcotic drugs to habitual users, tried in the district court for that county before Fish, J., and a jury which returned a verdict of guilty as charged in the indictment. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Ernest S. Cary* and *John F. Dahl,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *William M. Nash,* County Attorney, for respondent.

HALLAM, J.

Defendant was convicted of the violation of chapter 260, p. 358, Laws 1915, prohibiting the sale of narcotic drugs. The particular charge was that on January 21, 1918, he sold six grains of morphine to Frank Chandler. Defendant is a licensed physician. Chandler was an habitual user of the drug. Defendant admitted that on January 21, 1918, he gave to Chandler six grains of morphine and received four dollars from him. The evidence on the part of the state was that defendant sold the morphine to Chandler without any pretense of professional treatment. Defendant's claim was that he had been treating Chandler since September, 1917, for the drug habit by the gradual reduction method, which consists in administering the drug in gradually diminishing quantities to a point where the habit may be more easily cured, and that the transaction on January 21 was part of this treatment.

1. Section 1 of chapter 260, in general terms, forbids the selling of morphine and certain narcotic drugs, but provides that licensed phar-

macists may fill orders for the drug to a consumer pursuant to the written prescription of a physician. The sales in such cases are well hedged in by restrictive conditions. The most important are, that the prescription must be dated on the day on which it was signed and must bear the signature and address of the physician and the name of the person for whose use it is intended. It must be serially numbered and dated, and must be filed in its appropriate place in the prescription file of the compounder and retained on file for two years, open to inspection by any duly authorized officer of the law. Prescriptions may be filled but once, no copy may be given except to an officer of the law, and the medicine dispensed must be delivered in a container labeled with the serial number of the prescription, the date filled, the name of the person for whose use the medicine is intended, the name of the prescriber, and the name and address of the dispenser.

Section 1 further permits the "administration, sale, or disposal" of such drugs "by a legally licensed physician * * * to a patient upon whom he is in professional attendance," provided the physician shall keep a record of the name and address of the patient, the date of sale or disposal, and the amount of the drug transferred, and the drug must be delivered in a container, labeled with the name of the patient, the date of delivery, and the name and address of the dispenser.

Section 2 provides: "It shall be unlawful for any physician or dentist to furnish to or prescribe for the use of any habitual user of the same any of the substances enumerated in section 1 of this act; provided that the provisions of this section shall not be construed to prevent any legally licensed physician from prescribing in good faith for the use of any patient under his care, for the treatment of a drug habit such substances as he may deem necessary for such treatment; provided that such prescriptions are given in good faith for the treatment of such habit."

3. The court instructed the jury that, under this statute, "physicians are not permitted by law * * * to sell or furnish to habitual users, out of stocks kept on hand for any purpose, these habit forming drugs;" that "all sales and deliveries of such substances * * * to victims of the habit, whether for the purpose of curing the habit or any other object, must be made, if made at all, by a pharmacist or druggist, and by them only upon a physician's prescription, under the safeguards imposed by law in respect to such sales;" that "the question whether

this particular drug was administered or furnished in good faith or not is immaterial;" that "the statute makes a distinction between the disposal, prescription and furnishing of these drugs to habitual users and to ordinary patients. * * * In the case of patients not addicted, a physician is permitted in the usual course of his practice to prescribe them, and also to furnish them. As regards habitual users the statute first prohibits anybody from either furnishing or prescribing the drug to that class of people. But that is qualified by the permission to prescribe the drug in the case of a doctor, who in good faith having an addict under treatment for the cure of the habit sees fit to give him a prescription upon which he can procure the drug. He is forbidden, however, by this statute to furnish the drug himself."

Defendant questions these instructions. He claims that under section 2 a physician may both prescribe and furnish the drug to an addict if done in good faith and for purposes of treatment. The question of the correctness of this construction of the statute is the crucial question in the case.

We think the court correctly construed the statute. There is a plain difference between "prescribe" and "furnish." To prescribe is to give medical direction, to indicate remedies. To furnish is to supply or provide. This is the ordinary meaning of these terms. Both words are used, obviously with this distinction as to meaning, in the Federal Anti-Narcotic Law, Act of March 3, 1915, 38 St. 817. The context makes plain the intention to so use the words in our statute. In section 1 the word "prescription" is used repeatedly in the sense mentioned and with accurate direction as to the manner in which the prescription may be filled by a pharmacist. It is quite clear that the word "prescribe" was used in the same sense in section 2, and when that section first made it unlawful for a physician to "furnish to or prescribe for" the habitual user of the drug mentioned, and then provided that he might "prescribe" in good faith "for the use of" such habitual user, it used the term "prescribe" in ordinary sense, and it is used in that sense throughout the act. If we need look for the reason, it is doubtless found in the purpose to require two persons to be concerned in the supplying of narcotic drugs to addicts under the conditions as to publicity which the statute requires in case of prescriptions. In view of the strict requirements of section 1, as to the record to be kept by a physician administering the

drug to a patient not an addict, it is quite inconceivable that the legislature should have intended that a physician may furnish the drug to an addict without any safeguard or provision for record at all.

Defendant contends that all reasonable doubts as to construction are to be resolved in favor of the defendant and cites State v. Walsh, 43 Minn. 444, 45 N. W. 721. This is true enough, but "if the language be plain it will be construed as it reads." Bolles v. Outing Co. 175 U. S. 262, 20 Sup. Ct. 94, 44 L. ed. 156. The language is plain in this case.

3. It was competent for the state to introduce evidence of other sales of morphine to Chandler and of the sale of morphine to other drug addicts, in violation of the statute. Evidence of this character is admissible, if it is part of one plan or scheme carried on by defendant to wilfully violate the law, State v. Ames, 90 Minn. 183, 96 N. W. 330; State v. Monroe, 142 Minn. 394, 172 N. W. 313, or if it tends to show an inclination or predisposition to commit the offense charged. State v. Hartung, 141 Minn. 207, 169 N. W. 712. The evidence of other offenses received in this case was within the rule.

4. The court instructed the jury as follows: "Where a law is a new one and subject to misunderstanding and misinterpretation that is not a defense against a violation of the act. It is a matter which may properly be taken into consideration in determining what penalty should be imposed." This instruction might well have been omitted, yet what the court said was probably true. The construction of statutes is for the court. If a statute, beyond reasonable doubt, makes a certain act a crime, then a misinterpretation of the statute by a defendant is not a defense.

5. The refusal of the court to receive in evidence a stamp, with which defendant said he had stamped all containers of the drug which he may have furnished to patients, was not prejudicial error. The package found in Chandler's possession was not stamped. Defendant's claim is, that in view of defendant's testimony that he always affixed the stamp on every package dispensed, the stamp was admissible as tending to prove that the transaction testified to by Chandler never took place. The bearing of the evidence was very remote. In view of the fact that defendant admittedly furnished to Chandler the quantity of the drug found

in his possession, there could be no error in the rejection of this evidence. Judgment affirmed.

DIBELL, J. (dissenting).
I dissent.

Brown, C. J., took no part.