# STATE v. EDWARD J. SWEENEY.[1]

May 29, 1930.

No. 27,773.

[1]Reported in 231 N. W. 225.

*M. F. Kinkead,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Floyd B. Olson,* County Attorney, and *William G. Compton,* Assistant County Attorney, for the state.

WILSON, C. J.

Defendant was convicted of the crime of bribery and appealed from an order denying his motion for a new trial.

Defendant and Fred A. Maurer were Minneapolis aldermen representing the third ward therein. On their motion the city council on March 11, 1927, authorized the purchase of a G. M. C. five-ton truck from the General Motors Truck Company for $8,501.25. The indictment is that defendant received from Maurer $405 in consideration of his voting for the purchase of the truck. The facts as we state them rest largely upon the testimony of Maurer. He testified that in the latter part of 1925 he and defendant decided to "stick together," hoping to make some money, and that any deal of which either of them was the "father * * * we were to go fifty-fifty" on "any money that we procured." Perhaps the witness wished to be understood as saying that he did not give his unqualified consent to the corrupt arrangement until early in 1926. Defendant and Maurer initiated the movement to buy the truck for which there was an advertisement for bids. Maurer talked to the General Motors Company's agent and was promised a "commission" of about ten per cent. Maurer reported to defendant, who said that it was "all right." After the said action of the council the agent gave Maurer $810, and Maurer gave defendant $405. This is the basis for the indictment.

Upon the trial the state proved, largely by Maurer, offenses or corrupt conduct other than the charge in the indictment substantially as follows:

A street flusher was purchased in connection with the truck. Maurer came in contact with the agent therefor. Defendant knowingly acquiesced. After the matter passed the council Maurer received $400 and gave half thereof to defendant.

In December, 1925, the city council granted a permit to the Clover Leaf Creamery Company for the erection of a barn. Maurer talked to the agent of the creamery company, then to defendant, then to the agent, who thereafter gave Maurer $500. Maurer gave defendant $250. This money was not solicited or promised. It was apparently given as a gratuity after the permit was received, a recognition for past favors.

In 1926 a permit was issued by the council to Jennison-Rollins Company for an oil and gasolene station. Mr. Rose, their agent, talked to Maurer, who was thereby made $150 richer. He gave $75 to defendant. Maurer and defendant signed the permit.

In the fall of 1926 defendant told Maurer of the existence and location of a gambling house and that "there was another chance to make some money. * * * He said all we would have to do was to keep quiet and not bother them. * * * Absolutely ignore that the place was there, that was all. * * * He said that we would not handle any money ourselves, that is, that we would not do any collecting ourselves, but that we would have somebody else do it." Maurer refused but later acquiesced, and one Duffy gave him $25 per week while the place was running but he does not know what defendant received.

The gambling house ceased operation but opened again late in 1927 with a new proprietor. Maurer's attention was called to it. At defendant's suggestion Maurer called on Duffy. The place was mentioned. Duffy gave Maurer $75. The parties understood.

In May, 1927, one Davidson sought a filling station permit. While the application was pending Maurer, after talking to the applicant, told defendant that there would be $500 in it. Defendant agreed to sign the permit. He did so. Both approved it. Davidson paid Maurer $250, which Maurer gave defendant. Davidson agreed to pay the other $250, but he sold out and left town and Maurer did not get his share.

In August, 1928, there was under consideration the purchase of a scarifier grader. Maurer talked to the seller, who agreed to pay $165. The deal was made. Maurer got the money and gave to defendant $82.50.

In 1928, on recommendation of Maurer and defendant, the city bought three cars of macadam binder. Maurer investigated and reported to defendant that if bought from a named agent there would be $100 per car "in it for us." It was arranged to buy small cars so that each would cost under $1,000 so that it would not be necessary to advertise for bids. This transaction involved much manipulation and deliberate planning in great detail. The plan was consummated. Defendant collected the $100 on each car and gave Maurer $50 on each of the three cars.

1. A conviction cannot be had upon the uncorroborated testimony of an accomplice. G. S. 1923 (2 Mason, 1927) § 9903. Defendant was convicted of receiving a bribe. The indictment is under G. S. 1923 (2 Mason, 1927) § 9983. Was Maurer an accomplice in the crime for which defendant was convicted? The question has been answered in the negative. State v. Durnam, 73 Minn. 150, 75 N. W. 1127. The general test to determine whether a witness is or is not an accomplice is whether he himself could have been indicted for the offense either as principal or as an accessory. If he could not, then he is not an accomplice. State v. Durnam, 73 Minn. 150, 75 N. W. 1127. State v. Renswick, 85 Minn. 19, 88 N. W. 22; State v. Gordon, 105 Minn. 217, 117 N. W. 483, 15 Ann. Cas. 897; State v. Price, 135 Minn. 159, 160 N. W. 677; State v. Smith, 144 Minn. 348, 175 N. W. 689. The rule seems too well established to now adopt what some may term the more logical test as indicated in Egan v. U. S. 52 App. D. C. 384, 287 F. 958. But under our statute giving a bribe and accepting a bribe are separate offenses, and if Maurer were to be indicted for giving the bribe it would be under G. S. 1923 (2 Mason, 1927) § 9982. Under our decisions Maurer was not an accomplice in the legal significance contemplated by the statute. His acceptance of a bribe from the agent who paid him $810 is another offense. It follows that defendant's conviction in this case may, as it does, rest upon the uncorroborated testimony of Maurer.

■ Defendant urges that the evidence shows that he and Maurer were accomplices in receiving an $810 bribe from the

agent of the General Motors Corporation and that there was a fatal variance between the indictment and the proof. This is upon the theory that the transaction of the agent was exclusively with Maurer but that both Maurer and defendant were the joint beneficiaries of the $810, half of which it is asserted Maurer gave to defendant as a division of the spoils. Possibly the facts might have been so construed. The state construed the transaction differently and alleged that Maurer bribed defendant by giving him $405. The jury have found this to be the fact. The finding is not without support in the evidence, which among other things shows that defendant expressly refused to deal with the agent. Defendant's corrupt intention and conduct rested exclusively upon his conduct with Maurer. The mutually co-operative corrupt arrangement was susceptible to the construction that one of the two men was to bribe the other, or vice versa, as occasion might arise. The finding is adverse to the contention of a variance.

■ Defendant upon trial never made the claim of such variance. Objection to a variance cannot be made for the first time on appeal. State v. Brame, 61 Minn. 101, 63 N. W. 250; State v. Eidsvold Creamery Co. 156 Minn. 27, 194 N. W. 17.

■ The general rule in a criminal case is that evidence which in any manner shows or tends to show that the accused has committed another crime independent of that for which he is on trial is inadmissible. The reason is obvious and the rule should be rigorously enforced. The rule, however, like most rules, has certain exceptions not to be stated categorically but among which evidence of other crimes is admissible to prove the accusation when it tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) the identity of the accused, (5) sex crimes, (6) a common scheme or plan embracing the commission of similar crimes so related to each other that proof of one or more of such tends to establish the accusation. Such is the common law.

We are here interested only in the last mentioned exception. This exception rests upon system and involves a general and composite plan or scheme. Some connection between the crimes must be

shown to have existed in fact and in the mind of the defendant, uniting them for the accomplishment of a common purpose, before such evidence can be received. This connection and such system was not shown in State v. Fitchette, 88 Minn. 145, 92 N. W. 527, upon which defendant herein places much reliance. The evidence in the Fitchette case did not bring it within any of the exceptions mentioned. That case was controlled by the general rule. The system was shown in this case. All these transactions were corrupt and were for the purpose of corruptly obtaining money through the abuse of a public trust. This was the common aim. Evidence of such other crimes is admissible, not to establish the other crimes but as confirmation of the evidence tending to convict defendant of the crime for which he is on trial. State v. Monroe, 142 Minn. 394, 172 N. W. 313; State v. Whipple, 143 Minn. 403, 173 N. W. 801; State v. Friedman, 146 Minn. 373, 178 N. W. 895, 184 N. W. 272; State v. Ettenberg, 145 Minn. 39, 176 N. W. 171; State v. Friend, 151 Minn. 138, 186 N. W. 241; State v. Hacker, 153 Minn. 538, 191 N. W. 37; State v. Clark, 155 Minn. 117, 192 N. W. 737; State v. Upson, 162 Minn. 9, 201 N. W. 913; State v. Eames, 163 Minn. 249, 203 N. W. 769; State v. Sabatini, 171 Minn. 137, 213 N. W. 552; State v. Kiewel, 173 Minn. 473, 217 N. W. 598. A similar rule applies in civil actions involving fraud. Albrecht v. Rathai, 150 Minn. 256, 185 N. W. 259; State v. Horr, 163 Minn. 141, 148-149, 203 N. W. 979; Schmitt v. U. S. F. & G. Co. 169 Minn. 106, 210 N. W. 846; Terzian v. Carlson, 176 Minn. 219, 222 N. W. 921.

■ It is claimed that that portion of the evidence relating to other crimes which involves the gambling houses would constitute extortion by a public official in violation of G. S. 1923 (2 Mason, 1927) § 10380, and would constitute a misdemeanor only. We see no reason to limit the application of the exception to the rule to felonies but hold that it is equally applicable to misdemeanors when they are otherwise of such character as to come within the class. It may be noted however that it may be that the defendant and Maurer in dealing with the gambling houses were guilty of extortion under G. S. 1923 (2 Mason, 1927) § 10377.

■ The evidence being sufficient to justify a finding of a conspiracy between defendant and Maurer, everything said, done or written by Maurer in the furtherance of the common purpose was admissible against defendant. 1 & 2 Dunnell, Minn. Dig. (2 ed.) §§ 1556a, 2460. Such words and conduct are deemed the words and conduct of every one of the conspirators. The acting conspirator represents all the conspirators, and any evidence that would be admissible against him personally relative to his words and conduct in the furtherance of the conspiracy would be admissible against each of the conspirators. Such is deemed a relevant fact against each conspirator. State v. Hurst, 153 Minn. 525, 193 N. W. 680. Statements in the nature of a narrative of past events, after the conspiracy is ended or fully executed, as to measures taken in the execution or furtherance of the common purpose, are not relevant as such as against any conspirator. State v. Thaden, 43 Minn. 253, 45 N. W. 447; State v. Palmer, 79 Minn. 428, 82 N. W. 685. The theory is that such statements must be in furtherance of the common purpose. Nicolay v. Mallery, 62 Minn. 119, 64 N. W. 108; State v. Palmer, 79 Minn. 428, 82 N. W. 685. See State v. Hunter, 131 Minn. 252, 154 N. W. 1083, L. R. A. 1916C, 566; Logan v. U. S. 144 U. S. 263, 12 S. Ct. 617, 36 L. ed. 429; Feder v. U. S. (C. C. A.) 257 F. 694, 5 A. L. R. 370. Maurer's testimony as to other crimes was admissible.

■ The application of the last mentioned rule is difficult in view of the fact that the crime charged in the indictment was one of the crimes embraced within the field of the conspiracy. The conspiracy included it. This bribe was pursuant to the general scheme constituting the conspiracy. That, as we have seen, is why proof of other similar crimes was admissible. The fact that the circumstances of the bribery may have amounted to or been a part of a criminal conspiracy is not controlling. The same facts may in law constitute different offenses. In such a situation the state may make its election in putting the accused on trial. It has done so. The conspirators' conduct permitted the defendant to be prosecuted for the crime of receiving a bribe wherein Maurer was not an

accomplice, in contemplation of law, though he was a conspirator; and a potential accomplice upon another unadopted possible theory. Defendant cannot insist on the protection of the rules which might be applicable had the state elected to proceed upon a different theory.

The important element running through the rule permitting proof of other similar crimes is to learn what the same persons did under substantially like circumstances. We may have conspirators who are not necessarily accomplices. State v. Pearce, 56 Minn. 226, 57 N. W. 652, 1065; 16 C. J. 681, 682. Maurer not being in law an accomplice in the commission of the crime for which defendant was on trial, the proof of other related crimes committed by him and the defendant could be made by the testimony of Maurer alone if the jury saw fit to believe him. It will be noted that in some of such other crimes it may be said that Maurer was the giver of the bribe and the defendant the receiver, while in others defendant was the giver and Maurer was the receiver. In still others both received money from others. And finally they may be said to have jointly participated in the crime of extortion—all sounding in corrupt official or apparent official conduct, therein having a resemblance giving them the characteristics of similarity.

■ Recognizing the rule that the acts and declarations of a coconspirator are admissible, the defendant urges that the rule was violated by the reception of evidence, over his objection as hearsay, as to acts and declarations of persons other than conspirators. This related to the statements of third persons to whom Maurer talked in furtherance of the conspiracy and included: A talk with Rerick resulting in a bargain of $400 relative to the purchase of the flusher; a talk with Rose, who handed him $150; a talk with Davidson wherein Maurer was promised $500, half of which was later paid; a talk with Duffy, who handed him $75, using appropriate words to show that the money was the fruit of an unmolested gambling house; a talk with Fox wherein Maurer answered affirmatively Fox's inquiry as to whether he was satisfied with the results from the sale of the three cars of oil. The witness Golden representing

the gambling house testified that pursuant to a phone call from Duffy he called on Duffy, who told him that he would have to pay $75 a week or close the gambling house and that if he did not do so he would be arrested. Duffy told him that the money would have to be paid to aldermen Sweeney and Maurer and that he, Golden, complied with the demand and made the payments.

If Maurer were on trial it would be competent evidence to prove the things to which each of these witnesses testified. Under the conspiracy rule evidence being admissible as against Maurer would be admissible against defendant whether the defendant was present or not. To the extent that this may infringe upon the hearsay rule it must be regarded as an exception thereto. Well it may be. It is merely an adjunct or branch of the larger exception which permits proof of the words of a conspirator given in furtherance of the scheme in the absence of defendant. Maurer stood as the agent of the conspirators. The talk showed the corrupt bargains.

The establishment of the bargains with these third persons was a part of the details of the issue under the substantive law and the indictment. Such an issue necessarily involved utterances by conversation or other means of communication and were admissible under the issue. With rare exceptions they could not be proved otherwise. The statements of such third persons are original evidence. The rule is not changed merely because the talk was in the absence of the party against whom the evidence is offered. One of the limitations on the hearsay rule is that utterances which are within the issue may be proved. 3 Wigmore, Ev. § 1770; Fredin v. Richards, 66 Minn. 46, 68 N. W. 402; McDonald v. Smith, 99 Minn. 42, 108 N. W. 291; State Bank v. Strandberg, 148 Minn. 108, 180 N. W. 1006; State Bank v. Fassbender, 164 Minn. 317, 204 N. W. 953; Pleason R. & I. Co. v. Kleinman, 165 Minn. 342, 206 N. W. 645.

■ Much of this particular testimony disclosing statements of third persons is what is known in the law as "verbal acts"—which are admissible when they characterize conduct independently material to the issue, are equivocal, and aid in giving legal significance to and accompanying the conduct. 3 Wigmore, Ev. §§ 1772-1776;

Hanson v. Johnson, 161 Minn. 229, 201 N. W. 322. This is another exception to the hearsay rule but would not apply to such testimony as disclosed in the statement of Davidson, wherein his words did not accompany the payment of the money.

In so far as the testimony of the witness Golden is concerned, who was permitted to disclose his conversation with Duffy, this evidence was admissible not only as within the issue but also upon the theory that Duffy was the agent of the defendant and Maurer, and being with an authorized agent who was acting within the scope of his employment the conversation would be admissible against the defendant. We need not pursue the apparent permissible inference that Duffy joined the conspiracy, became a party thereto, and thereby gave an added reason, which is not necessary, to make his statements admissible the same as the statements of Maurer. Silliman v. Dobner, 165 Minn. 87, 205 N. W. 696. See State v. Duffy, 179 Minn. 439, 229 N. W. 558.

█ The assignments of error going to the alleged misconduct of the county attorney deserve little consideration. It rests largely upon the following record made by questions put by him to Maurer:

Q. What arrangement did you have with Mr. Sandberg with reference to the truck?

Upon objection being made the question was withdrawn.

Q. Did you or did you not receive that as a bribe?

Upon objection being made the question was withdrawn.

Q. Tell us whether or not in that conversation anything was said with reference to the quantity that you were to purchase.

Upon objection being made the question was withdrawn.

The argument is that the withdrawal did nothing to deprive the incident of its prejudicial effect and that the prosecutor deliberately and intentionally prejudiced the defendant. The claim is that the conduct is similar to that in State v. Klashtorni, 177 Minn. 363, 225 N. W. 278. This cannot be sustained. Here the incident was unsubstantial. It carried no prejudice. It is apparent that the withdrawal was not an admission of the merits of the objection which did not embrace the claim of prejudice, but the purpose as

shown by the record was commendable rather than reprehensible. It was the conduct of a careful practitioner, who sought to avoid unnecessary controversies by withdrawing possible objectionable questions and apparently attempted to reframe them in a way so as to avoid possible error.

One of the grounds for the motion for a new trial was newly discovered evidence. This was based upon affidavits. Charles L. Mosimann and Charles R. Bock, two convicts in the Minnesota state penitentiary wherein Maurer was confined at the time of this trial, made oath that after Maurer returned to prison, having testified herein, he stated: "That $800 that I admitted on the stand that Sweeney should have gotten, he never got." That in answer to the question as to why he had said Sweeney got the money, he replied: "The —— —— —— got me here so I am going to get them all here. I was promised that I would be out in nine or ten months."

The motion was also based upon the testimony of one Peter Jeub, a gambler, given in the case of State v. Duffy, 179 Minn. 439, 229 N. W. 558, wherein he made statements both favorable and unfavorable to Sweeney.

It also rested on an affidavit of David Dorfman, stating that Maurer, after being indicted, told him that Sweeney got nothing in the transactions but that if he, Maurer, was convicted Sweeney "will go with me." The affidavit of Harry Boardman was along the same lines.

In opposition to the motion the state presented the affidavit of Maurer denying the assertions of Mosimann, Bock, Dorfman and Boardman. It also submitted the affidavit of Pat Fitzgerald and H. S. Hill, two guards at the penitentiary, who denied the opportunity for Maurer to have made the alleged statements to Mosimann and Bock under the circumstances claimed by them.

Defendant's affidavits in the face of the opposing affidavits are not convincing. Such applications rest largely in the discretion of the trial court. We see no reason to justify our interference with its action.

The court refused defendant's request to instruct the jury that character evidence "may be sufficient of itself to raise a reason-

able doubt of the guilt of the defendant." In State v. Dolliver, 150 Minn. 155, 184 N. W. 848, 849, we held that it was error to charge the jury that "good reputation of the defendant is not of itself a sufficient fact from which a reasonable doubt of guilt may arise." But in State v. Dolliver, 154 Minn. 297, 191 N. W. 594, we held that it was not error to refuse a request similar to the one here involved. The refusal was not error, though the request might very appropriately have been given.

We have given careful consideration to the other assignments of error and the assaults made upon the instructions of the court. They seem to be without merit. In the absence of error our duty is plain.

Affirmed.

STONE, J. (dissenting).

I cannot agree that Maurer was not an accomplice of the defendant. The authority for that conclusion is State v. Durnam, 73 Minn. 150, 75 N. W. 1127. In its proposition that bribe-giver is not an accomplice of bribe-taker the case stands very much alone. In People v. Coffey, 161 Cal. 433, 119 P. 901, 39 L.R.A.(N.S.) 704, and Egan v. U. S. 52 App. D. C. 384, 287 F. 958, the "fallacious reasoning" of the Durnam case is referred to as the reason for not following it. If on this point the Durnam case is illogical and inherently indefensible, it ought to be overruled. It is of no more dignity than the precedents of equally long standing which in Suess v. Arrowhead S. P. Co. 180 Minn. 21, 230 N. W. 125, we finally concluded were so out of line with the reason and purpose of the law as to be no longer correct expressions of it.

Maurer and defendant were engaged, neither of them as a bribe-giver but both as bribe-takers. Their scheme was, if Maurer is to be believed, to get bribes whenever possible and divide them equally. Indeed that is the theory upon which we are sustaining the admission of the evidence of other similar offenses. It seems plain that each of the two men was the aider and abettor of the other and so his accomplice. No one would think of denying that were it not that the indictment charges that Maurer was the giver of the bribe.

But the form of the indictment is not the determinative thing. The real substance of the transaction as disclosed by the evidence should control decision. I think defendant has been deprived of a right given him by law, the immunity from conviction on the unsupported testimony of an accomplice, by a mere form of pleading, the mere technical cast of an indictment. To allow such a result is to put pleading over proof and exalt form above substance.

