13257

STATE v. GURRY

(161 S. E., 191)

F. W. Gurry was convicted of slander, and he appeals.

*Messrs. R. W. Wade, R. E. Babb* and *L. L. Long,* for appellant,

*Messrs. H. S. Blackwell, Solicitor,* and *Sullivan & Wilson* and *Huff & Huff,* for respondent,

November 5, 1931.

The opinion of the Court was delivered by Mr. Justice Bonham.

The defendant-appellant was tried at the spring, 1931, term of the Court of General Sessions for Laurens County upon an indictment which charged him with slander. The specific allegations were that he did, with malicious intent, originate, utter, circulate, and publish certain false statements against A. J. Boling, a minister of the gospel.

The alleged false and malicious statement set out in the first count of the indictment was to the effect that the said A. J. Boling had been posing as a single man and had been going to Greenwood, S. C., and had been having illicit relations with two women, Jessie Bailey and Rosa May Harrison.

The statement set out in the second count of the indictment, and alleged to be false and malicious, was to the effect that the said A. J. Boling had been posing as a single man and had been going to Greenwood for a year and a half and there having illicit relations with two crooked women.

The alleged false and malicious statement set out in the third count of the indictment was to the effect that "the said A. J. Boling would not keep his word for twenty-four hours, and if you knew what I know of the preacher you would not be sticking to him—"

He was convicted on the first and third counts, from which verdict and sentence thereon he appeals, upon fourteen exceptions. These contain a number of repetitions. Therefore they will not be considered seriatim, but the gist of all of them will be passed upon.

At the conclusion of the taking of the testimony defendant made a motion for a directed verdict as to the first and second counts of the indictment; the record does not disclose the grounds of the motion in numbered detail: We can only

gather the import of them from the report of counsel's argument on the motion, as it is set out in the transcript of record. The motion was denied. After conviction, a motion for new trial was made and denied.

The setting of this regrettable affair shows that the prosecutor, Boling, is a Methodist minister, who at that time was pastor of Bailey Memorial Church at Clinton, S. C., situated in the cotton mill village. The defendant was superintendent of the Clinton Mill. As superintendent he inaugurated certain amusements for the entertainment of the unemployed of the employees of the mill. It appears that the prosecutor declared some of these amusements and entertainments to be harmful, and preached from his pulpit against them, in language to which the defendant took exception. He sent for the preacher to come to his office, which he did. There was no other person in the office. The prosecutor testified that there the slanderous language set out in the first count of the indictment was uttered. The next day the prosecutor went to the office of the defendant, taking with him the board of stewards of his church and another person, and asked the defendant to repeat what he had said the day before. This the defendant declined to do, saying he had turned the matter over to Mr. Bailey. The stewards suggested that Boling himself repeat it. When the prosecutor began to repeat what he alleges was said by the defendant the day before, the defandant admonished him to be careful what he said, that he had made no charge against him. To this the prosecutor replied, "But you have stirred it up," and defendant said, "Right, right."

The exceptions cover substantially the same ground upon which the motions for directed verdict and for a new trial were predicated.

> The first of these is that there was no proof of publication of the alleged slanderous statements set out in the first and second counts and that it was error

not to grant these motions.

Defendant stated that he had brought the women in, carried them to the cotton mill office, and met there with Mr. Bailey and others. The conclusion is irresistible that he then and there discussed the allegations against the preacher.

The prosecutor testified that, while defendant was making his charges against him the first day in his office, a number of people came into the supply room adjoining the office; that the door between the rooms was open, only a screen door intervening; that he saw two men come in at this time and one stopped as if listening to them, and that he could hear what was said; that this was at the moment when defendant was charging him with having illicit relations with the named women. Did he hear it? That was a question for the jury. It is true that two men, employees of the mill, testified that they went in the supply room while Mr. Boling was in the office, but did not hear what was said. But there is no proof that other men did not go there during that time. The defendant himself testified that men were constantly going into that room. At the meeting next day defendant admits that, when the board of stewards was present and when the prosecutor said, "You stirred it up," defendant said, "Right, right, he has been doing this for a year and a half."

To the same effect is the testimony of the witnesses McMinn and S. W. Hudson.

The witness F. R. Norton testified that, at the meeting when the board of stewards was present, when Mr. Boling started to repeat what he alleges the defendant said to him the day before, defendant said, "I have brought no charges against you." Mr. Boling said, "No, but you said these women said I came over to their house in Greenwood and had illicit relations with them." Mr. Gurry said, "Right, right." The truth of this testimony was for the jury; it was amply sufficient to send the case to them.

This disposes also of the question of publication of the alleged slanderous words set out in the second count. Moreover the defendant was acquitted on the

second count, so that he suffered no harm there. All exceptions predicated on that count are overruled.

Defendant excepts for that the presiding Judge charged that the jury should not convict on both the first and second counts because they were practically the same. Certainly defendant cannot complain on that score; it was to his benefit.

"The doctrine is well settled by this Court that a defendant cannot complain where the determination of his case was more favorable to him than the evidence warranted." *People v. Muhlner,* 115 Cal., 303, 47 P., 128, 129, and numerous cases there cited.

"The next assignment of error is that his Honor erred in charging the jury as to the validity of the Smith deed. If we concede that his Honor was in error, it is an error of which the appellant cannot complain, as it was entirely favorable to the appellant." *Meredith v. Fretwell,* 128 S. C., 267, 122 S. E., 767, 768.

It is charged as error that the presiding Judge failed to charge the jury that, even where justification is set up as a defense, it does not relieve the State of the burden of proving or making out its case beyond a reasonable doubt.

The charge upon the question of justification and reasonable doubt was a clear and comprehensive exposition of the law; if defendant desired a more particular charge upon either subject, he should have asked for it.

It is alleged that there is no proof of malice upon which to predicate the charge contained in the third count.

The defendant does not deny that he called the witness McMinn to his office and told him that he (defendant) had been severely attacked by Mr. Boling. The witness expressed regret that a feeling like that had been aroused, to which defendant replied, "He has found one who will fight back at him."

To the witness Hudson he said, "So you are going to stick by your preacher?" When witness replied that he was, defendant said, "If you knew what I know about him you wouldn't stick by him."

There is the testimony that, at the meeting with the stewards, the defendant volunteered the statement, "This has been going on some time," which statement referred to the charge about the women.

There is testimony that the defendant sent for the young girl Pauline Norton, offered her a drink of whisky, and asked her to testify in his favor saying: "You can win this case for me by stating that Mr. Boling has made advances to you; that he has asked you to meet him at the church alone, and to go places with him, and that you have refused. That will win the case for me. If you don't do these things, I have all the other witnesses, my witnesses are against you and Mr. Boling. If you do this all of these witnesses will be called off, and your name won't be called in Court, if you will be there yourself and tell this yourself." The girl testified that she refused, and the defendant said: "If you don't do this you can take your medicine and it will be a bitter dose."

There is evidence that the defendant visited and conferred with the two women, Jessie Bailey and Rosa May Harrison, that he made them valuable presents and had luncheon with them, and that he there discussed the charges against appellant.

If all these things be true, there is evidence of malice for the consideration of the jury. They were charged with passing upon its truth.

The exception is made that the testimony from the witness Pitts was allowed as to the character of Jessie Bailey, on the ground that it was a collateral matter. The testimony was admitted because, as the Court said, it bore upon the charge in the second count, to wit, that the prosecutor had been having illicit relations with "crooked women." The names of the women were not given.

As the defendant was acquitted on that count, he has no ground for complaint.

Exception is made that the Court refused to permit counsel to cross-examine the prosecuting witness in reference to a certain letter alleged to have been written the defendant. Reference to folios 45 to 122 and from folios 126 to 138 will show that the witness was cross-examined at great length and over a wide range by defendant's counsel. It will be seen that he did cross-examine prosecutor in reference to the letter; that the witness denied that he had stated that Mr. Gurry had got a letter to which he paid no attention; he denied that he had published the contents of the letter or that it was published in his presence.

The Court said: "I don't see what light that sheds on the question before the jury."

Defendant's counsel said: "One of the charges in the indictment is that defendant had made the statement that the prosecutor could not be depended on to keep his word. He has testified to certain things with reference to this meeting and I propose to contradict him.

"The Court: The letter would have to have some relevancy to this case, you can't contradict him on an irrelevant matter.

"Counsel: It is to show motive."

The specific exception counsel now presents is that, by contradicting the prosecutor, they would show that the charge in the third count of the indictment which it is alleged the defendant made, to wit, "that the said A. J. Boling would not keep his word twenty-four hours," was true, would tend to sustain the plea of justification, and that for this reason he proposed to contradict him.

When the witness Cannon, for the defendant, was on the stand he was asked:

"State whether or not Mr. Boling said that Mr. Gurry had received a letter and had paid no attention to it.

"The Court: I don't see what that has got to do with this case.

"Counsel: To show the motive of issuing of the warrant."

No other offer was made to show that the prosecutor had spoken falsely when he testified on cross-examination to what occurred at Cannon's store. But was it error to overrule the question even if it be admitted that its purpose was to attack the character of the witness for veracity, by proving specific acts of untruthfulness? Let it be borne in mind that the charge contained in the third count of the indictment is not that the prosecutor lied, or swore falsely, but that he would not keep his word twenty-four hours. That statement, which defendant does not deny having made, grew out of the following occurrence. The defendant testified that he had planned some outdoor activities for the employees of the mill; that he asked the pastors of the two churches to be associated; that he outlined his ideas in regard to community house and playground work and asked for their support. "The first activity was practically completed, that was a field day. I asked Mr. Marlow and Mr. Boling to take part. They said they would and Mr. Marlow did, but Mr. Boling didn't, nor has he participated in any of our activities since."

Mr. Boling testified that he didn't attend because he found that the exercises were of nature of which his church did not approve and in which he, as a minister of that church, could not participate. It was in regard to this that the defendant made the statement that the prosecutor could not be relied upon to keep his word twenty-four hours.

The letter about which counsel desired to further cross-examine the prosecutor had no relation to this charge in the indictment, nor did it relate to anything of similar character. Whether he was swearing falsely in reference to that letter could throw no light on the question whether he would keep his word when he made an appointment.

Appellant relies in support of his contention upon the case of *Miller v. Shoe Co.*, 89 S. C., 532, 72 S. E., 397, 398, Ann. Cas., 1913-B, 106, upon this utterance by that eminent jurist, the late Hon. C. A. Woods, who was then

an associate justice of this Court: "It is true, as argued by plaintiff's counsel, that the rule is against allowing proof of specific acts of past conduct, occurring at a different time, *similar to that mentioned in the alleged slanderous charge* [italics added], but the rule does not extend to the exclusion of testimony as to other specific acts which may be reasonably considered so closely connected in sequence with the alleged slanderous charge as to throw light on the inquiry as to its truth or falsity."

The emphasized words mark the difference between that case and this. Whether a letter was or was not read at Cannon's store, which had no bearing on the charge, and whether the prosecutor did not tell the truth on the question of the publication of the letter, is not so related to the charge that the prosecutor would not keep his word twenty-four hours as to throw any light on the truth or falsity of the charge.

The further citation by appellant from the case of *Uhlman v. Farm, Stock & Home Co.*, 126 Minn., 239, 148 N. W., 102, Ann. Cas., 1915-D, 888, is open to the same criticism as is that from *Miller v. Shoe Co., supra:* "Where a charge is made in general terms imputing to the plaintiff a habit of wrong doing, particular acts of wrong doing of *same character as offense charged* [italics added] are admissible as testimony to prove the truth of the charge." The italicized words differentiate the case from this.

Here the proof that the prosecutor had not told the truth when he said the Gurry letter had not been published in his presence could not be evidence that he would not keep his word.

"The fifth assignment of error was based upon the ruling of the Court admitting the testimony of Miss Lucille C. Chappell tending to show that the plaintiff ill-treated his children by slapping, kicking, and even cursing them.

"No such charge as this was in issue here, and in our view of the case the admission of such testimony would have

the natural effect of diverting the minds of the jurors from the real issues to matter which was irrelevant and calculated to prejudice the plaintiff."

*Bragg v. Hammack,* 155 Va., 419, 155 S. E., 683, 688, 74 A. L. R., 730.

"The important element running through the rule permitting proof of other similar crimes is to learn what the same persons did under substantially like circumstances." *State v. Sweeney,* 180 Minn., 450, 231 N. W., 225, 228, 73 A. L. R., 386.

"The general rule in a criminal case is that evidence which in any manner shows or tends to show that the accused has committed another crime independent of that for which he is on trial is inadmissible. The reason is obvious and should be vigorously enforced. The rule, however, like most rules, has certain exceptions not to be stated categorically, but among which evidence of other crimes is admissible *to prove * * * the commission of similar crimes so related to each other that proof of one or more of such tends to establish the accusation.* Such is the common law" (italics added). *State v. Sweeney,* 180 Minn., 450, 231 N. W., 225, 227, 73 A. L. R., 384.

There was no error hereinabout in the ruling of the Circuit Judge.

On the trial of the case appellant interposed the defense of *quasi* privilege. He contended that he, as superintendent of the mill, was charged with overseeing and protecting the morals and good order of the community, and that what he did was done in the line of duty. Unquestionably he was within his claim of *quasi* privilege if he was acting in good faith and without malice. If he had communicated what his investigation disclosed only to those who were in authority and entitled to know it, his defense would have been complete. But the record tends to show that it was communicated to persons not authorized to receive it and with malicious intent. This made it essential to

submit these questions to the jury. They found against the defendant's claim of privilege.

In *True v. Sou. Ry. Co.*, 159 S. C., 456, 157 S. E., 618, 620, the plaintiff was nonsuited. On appeal, the Supreme Court said:

"It will be observed that the basis of the plaintiff's claim to libel and slander was the matter brought out in the investigation, instituted in his interest and according to the provisions of the agreement with his order.

"The ruling of his Honor, Judge Shipp, in passing upon the motion for nonsuit is clear and comprehensive; it meets with the approval of this Court and will be reported."

Judge Shipp said: "My understanding of the law is that the publication upon which you can complain would be against somebody that is not authorized to hear it. * * * In this case the publication was made by rule or agreement or whatever you call it, on notice and there is no objection made and no publication except to the persons in the Board of Inquiry and I can't see how you can predicate a suit upon a proposition of that sort."

The matter is disposed of in the case of *Switzer v. American Exp. Co.*, 119 S. C., 237, 112 S. E., 110, 112, 26 A. L. R., 819, in an opinion delivered by that learned jurist, Associate Justice Marion. We quote this, which he took from the case of *Sheftall v. Central of Ga. Ry. Co.*, 123 Ga., 395, 51 S. E., 646, 648: "To make the defense of privilege complete * * * good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner *and to proper parties only*, must appear. The absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying upon the privilege. All of these questions are, however, questions of fact for the jury to determine according to circumstances of each case under appropriate instructions from the Court" (italics added).

The Circuit Judge committed no error in refusing to direct a verdict on this score.

The other exceptions relate to matters of examination of witnesses and admissibility of evidence, which were essentially within the discretion of the Court. That discretion was not abused. We find no error.

It follows that the exceptions must be overruled, and the judgment of the lower Court affirmed. It is so ordered.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN concurs in result.